P. H. LEWIS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Excepting and Assigning Errors *En Masse*—Indictment for murder in first degree includes charge of all lower Degrees—Presence of Prisoner at Rendition of Verdict.

1. Where the giving or refusal to give two or more instructions, announcing separate and distinct propositions of law, are excepted to *en masse* in a single exception, or are assigned *en masse* in a single assignment of error, the appelate court will consider such an exception, or such an assignment of error, no further after discovering that one of the instructions so excepted to or assigned *en masse* was properly given or refused.

2. It is well settled here that an indictment in terms charging murder in the first degree does include a sufficient charging of all the lower degrees of murder and manslaughter.

3. While it is far better in every case of felony for the record minute entries to show affirmatively the personal presence of the denfendant at the rendition of the verdict, as well as at every other stage or step in the trial, yet, in case it does not so expressly appear, the judgment will not be disturbed by an appellate court, if it appears from the record by necessary and reasonable implication that he was present at every stage or step of the trial.

Writ of Error to the Circuit Court for Calhoun County.

The facts in the case are stated in the opinion of the court.

*D. L. McKinnon,* for Plaintiff in Error.

*The Attorney-General,* for Defendant in Error.

TAYLOR, C. J.:

The plaintiff in error was indicted and tried for murder in the first degree at the Fall term, 1899, of the Circuit Court of Calhoun county, was convicted of murder in the second degree and from the life imprisonment sentence imposed takes writ of error.

The following question was propounded at the trial to one of the defendant's witnesses: "Did you ever hear the defendant forbid the deceased to come on his premises, and warn him never to come on them again; if so when and where?" The State objected to the question on the ground of irrelevancy, the objection was sustained and this ruling comprises the first assignment of error.

The contention here is that the relevancy of the fact sought to be elicited by this excluded question lay in its tendency to show an absence of premeditated design on the part of the defendant in firing the fatal shot. In our view, if it had any bearing at all upon the question of premeditated design, its tendency was to show the presence of such design, when considered in connection with all the other facts and circumstances in proof, and while it may have been of advantage to the State to have admitted it, we can not see that the defendant was so injured by its exclusion as to justify us in adjudging it to be reversible error.

The court refused to give the two following instructions requested by the defendant: "If you believe from the evidence that at the time the defendant shot the deceased, Harrod, he believed and had reason to blieve that his life was in danger, or that he was in danger of great bodily harm at the hands of the deceased, then he was justified or excused for shooting Harrod. And in determining whether the defendant did so believe and had reason to believe so, you should look at the circumstances from the standpoint of the defendant and deceased and all other circumstances. If to the accused there was an unusually apparent necessity to kill to save himself, he will be excused, though to some one else there might not have seemed to be any such necessity, and though in fact there was no such necessity." "If you believe from the evidence that the deceased was trespassing upon the premises of the defendant after the defendant had forbid his coming on his place, and at the time the defendant fired the gun he did not intend or expect to hit or injure the deceased, but merely to intimidate or frighten him away but contrary to his reasonable expectations, did wound the deceased, he is not

liable for the result and you will acquit him." Such re-
fusal constitutes the second assignment of error.

These two instructions announce separate and dis-
tinct propositions of law, and were excepted to *en masse*,
and are assigned in gross by a single assignment of er-
ror. Under these circumstances the settled rule in this
State is that the appellate court will consider such an
assignment no further after discovering that one of the
instructions so excepted to or assigned *en masse* was
properly refused. Eggart v. State, 40 Fla. 527, 25
South. Rep. 144; McCoggle v. State, 41 Fla. ——, 26
South. Rep. 734, and cases cited. Following this rule
we find that the last above quoted instruction was prop-
erly refused. It erroneously holds out the idea that be-
cause a party forbids another to come on his premises,
he is entirely exempt from criminal responsibility, if, in
carelessly and recklessly shooting at him with intent to
frighten him off, he unexpectedly wounds and kills the
trespasser. One of the refused instructions thus ex-
cepted to and assigned by a single general exception
and assignment having been found to have been prop-
erly refused this assignment of error must fail.

It is next contended that the court below erred in
denying the defendant's motion for new trial. Under
this assignment it is contended that the evidence does
not in terms sustain the conviction of murder in the sec-
ond degree as defined by our statute, and that inasmuch
as the indictment contains but one count that charges
murder in the first degree, the defendant has been con-
victed of a crime with which he was not charged, the
contention being that an indictment charging murder in
the first degree only, does not include a charge of mur-
der in the second degree. It is no longer an open ques-
tion here that an indictment in terms charging murder

in the first degree does include a sufficient charging of all the lower degrees of murder and manslaughter. Potsdamer v. State, 17 Fla. 895; Reynolds v .State, 34 Fla. 175, 16 South Rep. 78; McCoy v. State, 40 Fla. 494, 24 South. Rep. 485. We think, too, that the evidence in this case does sustain, in terms, the finding of murder in the second degree, as defined by our statute, but even though it did not, and had the verdict been for murder in the first degree, we do not think we 'would have been justified in reversing it on the ground of a lack of evidence to sustain it, and this being true, under the provisions of Chapter 4392, laws of 1895, we could not reverse the finding of murder in the second degree. McCoy v. State, *supra*; Morrison v. State (decided at the present term).

It is next contended that the evidence does not sustain the fact that the death was produced by the wound inflicted by the defendant, but was the result of natural causes. The evidence was conflicting upon this point. That for the State was sufficient to establish the fact that the death resulted from the wound inflicted by the defendant, the jury have, from their verdict, given credence to it, and it is not for this court to disturb their settlement of the conflict.

The fourth and last error assigned is that the record does not show that the defendant was present at the rendition of the verdict. The record entries as disclosed to us in the transcript sent here shows the personal presence of the defendant on his arraignment and plea, on the 13th day of October, 1899, and at the empanelling of the jury and during the trial, and on the retirement of the jury to consider of their verdict, all of which occurred on the said 13th of October, 1899, then follows the ensuing entries: "And on the 14th day of

October, A. D. 1899, the following proceedings were had in said case, in words and figures following, to-wit:

The State of Florida,

vs.                          Murder.

P. H. Lewis.

· The jury empanelled in this case on the previous day come into open court and return the following verdict, to-wit: 'We, the jury, find the defendant guilty of murder in the second degree: so say we all.'

(Signed)                  Charles Robinson,

Foreman.

"Whereupon the court then proceeded to pronounce sentence upon the said defendant in words and figures following, to-wit: P. H. Lewis, who stands convicted of murder in the second degree, was led to the bar in custody of the sheriff, and it being demanded of him if anything for himself he had or knew to say why the court should not proceed to render judgment against him, said nothing but what he before had said, therefore, it is considered by the court that you, P. H. Lewis, for your said offence be imprisoned by confinement at hard labor in the State prison of the State of Florida for the full term of your natural life, to begin and run from this date, and that you pay the costs of this prosecution." The bill of exceptions further shows that the defendant made and submitted his motion for new trial on said 14th day of October, 1899, and that the same was overruled on the same day.

While it is far better in every case for the record minute entries to show affirmatively the personal presence of the defendant at the rendition of the verdict, as well as at every other stage or step in the trial, yet we

think in this case that from the entries before us in the record that it sufficiently appears therefrom by necessary and reasonable implication that he was present at the rendition of the verdict. It is affirmatively shown that he was personally present at the arraignment and plea and at the imposition of the sentence; and although the minute entries show that the trial began on the 13th of October, and that the verdict was rendered on the 14th of the same month, yet there is nothing to show that there was any adjournment or recess of the court during the period covered by these entries, or that the continued presence of the defendant in court during the whole time was interrupted. For aught shown by the record to the contrary there may have been a continuous and uninterrupted session of the court from the beginning of the trial until the imposition of sentence. The record entries before us are perfectly consistent with the idea that this trial may have actually begun during the afternoon of the 13th day of October and ended by the imposition of the sentence at the half hour past midnight, A. M. of the next day, without interruption by recess or otherwise. This assignment must therefore, fail. Brown v. State, 29 Fla. 543, 10 South. Rep. 736; McCoy v. State, 40 Fla. 494, 24 South. Rep. 485.

Without rehearsing it in detail, we are of the opinion that the verdict is sustained under the law by the evidence, and finding no error in the record, the judgment of the court below is affirmed.