JAMES O. WILLIAMS, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. When an indictment for murder in the first degree conforms to the statute, in alleging that the assault was made and the shooting was done "unlawfully, feloniously and from a premeditated design to effect the death" of the person shot, it is not necessary to further allege that the assault and shooting were made and done with malice, or with malice aforethought.

2. Where it does not appear that the action of the trial judge in excusing a person called as a juror was in any way prejudicial to the defendant, or that there was any abuse of discretion, no error is shown.

3. In the conduct of a trial, the trial judge must necessarily exercise a large discretion in excusing persons from jury service, in dealing with jurors who are sick, and in convening and adjourning the court, and where his conduct of the trial is not in any way prejudicial to the defendant or in violation of any law, it affords no ground for reversal of a case.

4. A witness who is a physician and who has testified as an expert for the defendant, and had stated that the defendant was suffering from acute delusions of insanity, "may properly be asked on cross-examination:" "In discussing the act of a person is not this the test of delusional insanity? Did he do the act under the delusion believing it to be other than it was?" and the further question "Then if that person does the act knowing what it was, believing it to be exactly as it was, is he laboring under any delusion?"

5. A general objection to a question asked a witness, no precise ground of objection being stated, where the question objected to is not palpably improper and inadmissible for any purpose or under any circumstances, will not be considered.

6. When a single assignment of error. embraces objections to the rulings of the court on three distinct and separate questions asked a witness, this court will consider such an assignment no further after discovering that one of the objections is without merit.

7. With reference to the sufficiency of the scope of a hypothetical question  propounded to an expert witness, the third head-note in Baker v. State, 30 Fla. 41, 11 South. Rep. 492, and the explication of the principle asserted therein, contained in the opinion, are approved and followed.

8. Where the only argument or comments in the briefs of plaintiff in error in reference to a number of  assignments of error predicated on refusals of the trial  judge -to  give various instructions is that "we think the court erred in refusing to charge the jury as requested," and where the same method of argument is pursued with reference to assignments of error based on the charge given  by the court, this court, following the rule laid down in Thomas v. State, 36 Fla. 109, 18 South. Rep. 331, will  read  the charges and instructions, and if no glaring error, prejudicial to the plaintiff in error is discovered, will not further investigate the assignments involved.

9. An expert witness who has given an opinion upon a question submitted to him, may, be further  examined as to the reasons for his opinion.

10. In a trial upon an indictment charging murder in the first degree where there is a single defendant, and where the records shows who composed the jury, the court in which the trial is had, and the date of the return of the verdict, a verdict  in the following form is sufficient:  "We, the jury, find the defendant guilty of murder in the first de· gree and· recommend him to the mercy of the court."

11. Where there is sufficient evidence to support the findings of the jury, even though the evidence be conflicting, and no

9 S C

error in law is discovered, this court will not reverse the ruling of the trial judge overruling a motion for a new trial based on the ground that the verdict is contrary to law, against the weight of evidence, and contrary to the evidence.

12. Where the question of a defendant's sanity and responsibility has been fairly submitted to the jury, both in the evidence and in the charges of the court, this court will not reverse the judgment on the ground that the evidence was sufficient to raise a reasonable doubt of the defendant's sanity at the time of the homicide (the doctrines of the law as to insanity as a defense enumerated in Davis v. State, 44 Fla. 32, 32 South. Rep. 822, approved and followed.)

13 When, after a verdict has been rendered by the jury finding the defendant guilty, a motion to stay the sentence and judgment is made and the court is requested to empanel a jury to try the question of the present insanity of defendant, supported by affidavits, on the ground that the defendant is presently insane and incapable of answering the court, what he, the defendant, had to say why sentence should not be passed upon him, and where the affidavits offered to sustain such motion were made by persons who testified in the trial on behalf of the defendant upon the question of his sanity at the time of the homicidal act, and such affidavits do not set up any new facts tending to show the present insanity of the defendant, and the trial judge has had opportunity to observe the conduct and demeanor of the defendant in court, and from such opportunity, and other auxiliary means, to form an opinion as to the sanity of the defendant, and the judge has no doubt of the present sanity of defendant, he commits no error in refusing said motion.

This case was decided by Division A.

Writ of error to the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the Court.

James O. Williams v. The State of Florida—Opinion of Court.

*G. A. Whorley* and *H. F. Atkinson,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, and *Alex St. Clair-Abrams,* for the State.

HOCKER, J.

At the Spring term, A. D. 1902, of the Circuit Court of Dade County, Florida, James O. Williams, the plaintiff in error, was indicted for the murder of Mark D. Bartleson, was tried at said term, was found by the jury guilty of murder in the first degree, with a recommendation to mercy, and was sentenced by the court to imprisonment for life in the State penitentiary. From the judgment and sentence a writ of error was sued out from this court.

The first assignment of error is: "The court erred in denying defendant's motion to quash the indictment." The only contention made in the brief of plaintiff in error to sustain this assignment is that the indictment does not allege malice, malice being an essential element of the crime of murder.

The indictment, which is in the usual form, after the ordinary introductory statements, presents that both an assault was made on Bartleson by Williams, and that Bartleson was shot by Williams, "unlawfully feloneously and from a premeditated design to effect the death of said Mark D. Bartleson." Under our statute, the indictment sufficiently charges murder in the first degree.

The second assignment of error: The court erred in requiring the juror Bloodworth to answer question of

State Attoney "would the condition of your business so affect your mind as to prevent you from giving a careful and thoughtful consideration over the objection of defendant."

The third assignment of error: "The court erred in excusing the juror Bloodworth for cause as shown on the record."

Considering the two last assignments of error together, it does not appear that the action of the judge in excusing the juor was in any way prejudicial to the defendant, or that there was any abuse of discretion. Edwards v. State, 39 Fla. 753, 23 South. Rep. 537; John D. C. v. State *ex rel.* Julia V. H., 16 Fla. 554, text 561.

The fourth assignment of error: The court erred in making the following ruling: "The panel of twelve jurors was tendered to the defendant by the State, two being absent from the box, reported sick, counsel for defendant objected to the tender on the ground that two of the jurors were absent from the box. The court: The court does not require you to accept or challenge any member of this jury, but the matter stands in abeyance until seven o'clock this evening for inquiry of the condition of the jurors, counsel for defendant objected to the passing of the case until seven o'clock, which objection was overruled and defendant excepted." The record shows that when the court met at seven o'clock, upon the report of physicians as to the condition of the two sick jurors, they were excused from service by the court. There was no abuse of discretion. Jenkins v. State, 31 Fla. 196, 12 South Rep. 677.

The fifth assignment of error: The court erred in having the witnesses who were to testify merely as medical

James O. Williams v. The State of Florida—Opinion of Court.

experts put under the rule over the objection of the defendant. No authority is cited by plaintiff in error in support of this assignment, and no argument made to sustain it. No abuse of discretion appears. Roberts v. State, 122 Ala. 47, 25 South. Rep. 238; 21 Ency. Pl. & Pr., 982.

The sixth assignment of error: The court erred in admitting the pistol in evidence. The pistol was proven by the sheriff to have been delivered to him by the plaintiff in error a short time after the shooting, when he informed the sheriff he had shot a man. It was shown to be the same, or a similar pistol, loaned by one of the witnesses to plaintiff in error a short while before the shooting. The court admitted it in evidence as the pistol given to the sheriff. No error appears.

The seventh assignment of error: The court erred in requiring the witness for the defendant, Dr. H. D. Allen, upon cross-examination to answer the question: "In discussing the act of a person is not this the test of delusional insanity? Did he do the act under the delusion believing it to be other than it was?" over the objection of the defendant that the question was an improper cross.

The eighth assignment of error: The court erred in requiring the witness Allen upon cross-examination to answer the question. "Then if that person does the act knowing what it was, believing it to be exactly as it was, is he laboring under any delusion," over the objection of the defendant that the State wished to elicit an opinion of law from the witness.

The seventh and eighth assignments are considered toegther. Dr. Allen was a witness for the defendant—a specialist in nervous and mental diseases, had testified in chief as to the mental condition of the defendant—had

treated him as a patient—had testified that his disease was acute delusions of insanity, with well marked imperative ideas. No error appears in either of these assignments.

The ninth assignment of error: The court erred in permitting the witness Drake in rebuttal to answer the question asked by the State: "Was there anything in the conduct or conversation of the defendant while in your company conversing with you, between the middle of December and the twenty-eighth of January, from which you could have formed an opinion that he was insane," over the objection of the defendant. The bill of exceptions shows the following after the foregoing question was asked: "Mr. Whorley: I object. The court then and there overruled defendant's objection, to which ruling of the court the defendant then and there excepted."

It is the settled law in this State that general objections to evidence proposed without stating the precise ground of objection are vague and nugatory, and are without weight before an appellate court, unless the evidence objected to is palpably prejudicial, improper and inadmissible for any purpose or under any circumstances. Mitchell v. State, 43 Fla. 584, 31 South. Rep. 242; Kirby v. State, 44 Fla. 81, 32 South. Rep. 836. No error appears.

The tenth assignment of error. The court erred in sustaining the objection of the State to the question propounded to the witness Flannagan in speaking of the conversation between the witness and defendant in relation to the difficulty with Lanier, "well do you think that provocation offered there was sufficient to arouse an ordinarily reasonable man," and in not permitting counsel to finish the question, or witness to answer it. The only ar-

gument presented in the brief of plaintiff in error to sustain this assignment is, "we think the court erred as complained of in the tenth assignment of error, as counsel should be allowed to at any rate ask questions before the court can pass upon them." The bill of exceptions does not show that the question was not a complete one, or that any addition to it was proposed, or that the court ruled upon it, until after objection by the State Attorney. No error appears.

The eleventh assignment of error. The court erred in sustaining the objection of counsel for the State to the following question propounded to the witness Flannagan on cross examination, to-wit: "Have you any experience with insane people;" "have you any experience in judging of rationality or irrationality in people;" "Mr. Flannagan, did he do or say anything in those conversations that would lead you especially to believe that his conversations were rational?" This assignment embraces three distinct and separate questions asked the witness, objected to separately and ruled on separately. This court holds that where the giving or refusal to give two or more instructions announcing separate and distinct propositions of law is excepted to en masse in a single exception, or is assigned en masse in a single assignment of error, the appellate court will consider such an exception or such an assignment of error no further after discovering that one of the instructions so excepted to or assigned en masse was properly given or refused. Lewis v. State, 42 Fla. 253, 28 South. Rep. 397. The principal here announced applies to assignments of error upon the admission or rejection of testimony. Each specification

of error must be single, clear, certain and complete in itself, and two or more distinct allegations of error should not be included in one assignment. 2 Ency. Pl. & Pr., 938.

Witness Flannagan was the marshal of Miami. He had testified in substance that he knew defendant, had occasionally conversed with him between the middle of December before the time of the homicide, and the time of that occurrence, and that he conversed intelligently so far as he could see. He was not examined by the State as an expert, and was asked no questions in regard to insanity. We can see no impropriety in the action of the court in not permitting the first of the questions contained in the assignment. Under the rule stated we go no further, and we find no error.

The twelfth assignment of error. The court erred in overruling the objection of the defendant to the hypothetical question propounded to Doctor Sollace Mitchell by the State in rebuttal.

The thirteenth assignment of error. The court erred in refusing to strike out all the testimony of the witness Dr. Sollace Mitchell on motion for counsel for defendant. We will consider the twelfth and thirteenth assignments together. Dr. Mitchell was placed on the stand by the State as an expert. A long hypothetical question embracing substantially, though not in absolute detail, the evidence which had been submitted bearing on the question of the insanity of the defendant was propounded to the witness , and he was asked his opinion as to the sanity of the defendant. The question was objected to by defendant's attorney on the ground "that the witness being an expert witness, and the question propounded to

the witness being a hypothetical case, the question does not state all of the testimony on the case.    The court overruled this objection and exception was taken to the ruling.    Dr. Mitchell then answered: "In my opinion the man was sane."  He was then asked by the State Attorney "on what do you base your opinion?" He answered "on the fact that all the evidence shows that first there was motive in his act, the motive of anger; second, the evidence shows that there was deliberate premeditation.    It was not one of those uncontrollable impulses that are acted on immediately."    At this point the defendant's attorney objected to the witness stating in the presence of the jury all the motives that might suggest themselves to his mind, or to give the reasons on which he bases his opinion.  Pending a ruling on objection the court took a recess, and on  re-opening the  defendant moved to strike out the whole of the testimony of Dr. Mitchell, on the ground that the witness was determining a question that should be left entirely to the jury. This motion the court overruled and the defendant excepted.

In Baker v. State, 30 Fla. 41, 11 South. Rep. 492, this court holds: "Whereas an expert may not be interrogated upon an hypothesis having no foundation in the evidence, it is not necessary that the hypothetical case put to him should be an exact reproduction of the evidence or an accurate presentation of what has been proved. Counsel may present a hypothetical case in accordance with any reasonable theory of the effect of the evidence, and if the jury find the facts on which his hypothesis or theory of the effect of the evidence is based are not proved, the answer of the expert necessary falls with the

hypothesis." The twelfth assignment of error is not sustained. As a part of the testimony of Dr. Mitchell, which the defendant desired to strike, was the answer to the hipothetical question referred to in twelfth assignment—a legitimate answer to a legitimate question. The thirteenth assignment of error is not well taken. We do not intend to imply that any part of the testimony of the witness should have been stricken.

The fourteenth, fifteenth and sixteenth assignments of error will be hereafter considered.

In support of the seventeenth, eighteenth, nineteenth, twentieth and twenty-first assignments of error, based on the refusal of the judge to give certain instructions requested by the defendant, no specific error is pointed out either in the assignments or in the brief of plaintiff in error. The attorneys of the plaintiff in error simply remark "we think the court erred in refusing to chage the jury as requested" in their instructions, and refer us to Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618; Armstrong v. State, 27 Fla. 366, 9 South. Rep. 1; Hodge v. State, 26 Fla. 11, 7 South. Rep. 593; Garner v. State, 28 Fla. 113, 9 South. Rep. 835; Commonwealth v. Rogers, 7 Metcalf (Mass.) 500, S. C. 41 Am. Dec. 458; Andersen v. State, 43 Conn. 514, S. C. 21 Am. Rep. 669; Scott v. Commonwealth, 4 Metcalfe (Ky.) 227, S. C. 83 Am. Dec. 461; Shannahan v. Commonwealth, 8 Bush. 463, S. C. 8 Am. Rep. 465; Stevens v. State, 31 Ind. 485, S. C. 99 Am. Dec. 634, and to certain pages of Clevenger's Medical Jurisprudence (which last is not accessible to us). The cases referred to other than the Florida ones seem to deal with the question of moral insanity or irresistible impulse, and the application of the Florida cases is not apparent. The doctrine of moral insanity or irresistible

impulse as a defense in criminal cases is not recognized in this State. Davis v. State, 44 Fla. 32, 32 South. Rep. 822. We have discovered no error in these assignments.

In support of assignments numbered twenty-two, twenty-three, twenty-four, twenty-five, twenty-six, twenty-seven, twenty-eight, twenty-nine, thirty, thirty-one, thirty-two and thirty-three, based on charges given by the judge to the jury, the attorneys of the plaintiff in error do not point out any specific error in any charge but simply say "we think the court erred in charging the jury as complained of" in these assignments, and cite the above quoted authorities in support of these several assignments. We have read the charges complained of, and in such reading have discovered no glaring error which would be likely to prejudice the defendant. Subject probably to some verbal criticism they seem to be based on former decisions of this court especially on those dealing with insanity as a defense in this State. Davis v. State and Armstrong v. State, *supra;* Copeland v. State, 41 Fla. 320, 26 South. Rep. 319.

The brief of plaintiff in error, in the above and many other assignments, is obnoxious to the criticism of this court made upon a somewhat similar one in the case of Thomas v. State, 36 Fla. 109, 18 South. Rep. 331, approved in Porter v. Parslow, 39 Fla. 50, 21 South. Rep. 574.

The thirty-fourth assignment of error. This assignment is based on the refusal of the court to give in charge to the jury the whole of section 2922, Rev. Stats. The court had already charged the jury "if you acquit the accused for the cause of insanity you must state in your verdict that you acquit him for such cause. It is argued that the giving of a part of the section in charge, without giving the whole, was calculated to mislead the jury, but

we are not informed in what respect the jury could be misled.     With their verdict their connection with the case ceased, and the future disposition of the defendant, if acquittal on the ground of insanity, was left by the statute with the court.

The thirty-fifth assignment of error.    The court erred in overruling defendant's objection to the witness Dr. Sollace Mitchell giving as his reasons for his opinion based on hypothetical puestions that the facts stated to him showed motive and revenge, and power to premeditate and volition and the knowledge to know right from wrong because of anxiety for his safety.    No authority is referred to to sustain this assignment.    We think an expert may give the reasons for his opinion.    Lawson on Expert and Opinion Evidence (2nd ed.), 269.

The thirty-sixth assignment of error:   "The minutes of the Circuit Court does not show that the defendant was present in open court during the trial of his case on the ourteenth day of   May, 1902."     This defect has   been cured by a supplement to the   transcript of the record, filed in this court with the consent of the attorneys for the plaintiff in error.

The thirty-seventh assignment of error.    The record does not show what jurors were accepted by the State and placed in charge of the bailiffs before the jury was accepted and sworn to try the case.    No reason is given or authority cited to support this assignment.    We discover no error.

The thirty-eighth assignment of error:    The court erred in taking a recess of said court from the noon hour to the following morning to ascertain if in the opinion of the medical men, two of the jurors who were then sick would be able to sit on the said jury.    The record does

not sustain the facts alleged in this assignment. It appears that at opening of the court at 2 o'clock P. M. on May 19th, two of the persons selected as jurors, but not sworn, were sick and absent. The court adjourned until 7 o'clock for inquiry into their condition. It met at 7 o'clock P. M., and having ascertained that two of the persons who had been tendered by the State as jurors were sick and unable to serve as jurors, they were discharged, and the court then adjourned until the next morning. No abuse of judicial discretion is shown.

The thirty-ninth assignment of error: "Because the court erred in permitting the case of the State of Florida versus William Davis to be tried between 2 o'clock P. M., and 7 o'clock P. M., May 19th, 1902, over the objection of the defendant." The bill of exceptions does not show that any such occurrence transpired, and therefore we can not give any opinion on the question presented.

The fortieth assignment of error: is not supported by any objection or exception found in the bill of exceptions.

The forty-first assignment of error: The verdict of the jury is defective in that it does not bear date, is not entitled in the cause, does not mention the name of the defendant, and is not signed by all the jurors. The only authority cited to support this assignment is Bryant v. State, 34 Fla. 291. 16 South. Rep. 177. The record shows who the defendant is, who composed the jury empannelled and sworn in his case, the day the jury came into court with their verdict (20th May, 1902), which was in the following language: "We, the jury, find the defendant guilty of murder in the first degree, and recommend him to the mercy of the court. L. J. Griffin, Foreman," and that L. J. Griffin was a member of the jury. The plaintiff in error was the only defendant, and considering the

verdict in connection with the record there can be no
doubt or uncertainty as to the party tried, as to the per-
sons who composed the jury, as to the court, as to the
date of the verdict, as to the party convicted. State v.
Faulk, 30 La. Ann. 831.

We now recur to the fourteenth   assignment of error
which was "the court erred in denying the defendant's
motion for a new trial." The only ground of this motion
which is argued here, and· which has not been already
disposed of in considering the instructions and charges
given and refused, is that the verdict was contrary to
law, without evidence to support it, against the weight
of evidence and contrary to the evidence. The conten-
tion is that the evidence in the case raised a reasonable
doubt of the insanity of the defendant, and he should
have been acquitted. Independent of this question of
the sanity of the defendant, there is no reasonable doubt
that the verdict is supported by the evidence. The kill-
ing of Bartleson by the defendant is shown to have been
done with premeditation, and absolutely without legal
justification or excuse. Upon the question of the insanity
of the defendant a large number of witnesses were ex-
amined both for the defense and for the prosecution. It
is too bulky to be inserted in this opinion, but we have
carefully examined it, and while in some respects conflict-
ing, it warranted the jury in concluding that the defend-
ant was, at the time of the homicide, responsible for his
acts. The question of the defendant's sanity and respon-
sibility was fairly submitted to them both by the evidence
and the charges of the court, and we can discover no
ground for disturbing the verdict under this assignment.

The fifteenth assignment of error :   The court erred in
denying the defendant's motion in arrest of judgment.

The sixteenth assignment of error: The court erred in refusing to panel a jury to try the issue whether or not the defendant was insane, after verdict of the jury, and before sentence and judgment had been pronounced upon the suggestion of the counsel for defendant, that the defendant was presently insane and mentally incapable of answering the question by the court what he, the defendant, had to say why sentence should not be passed upon him, and in denying defendant's motion that a jury should be empanelled to try such issue.

The fifteenth and sixteenth assignments will be considered together. After the jury had rendered their verdict and after the motion for a new trial was made and overruled, the defendant by his attorneys made the following motion: "Now comes the defendant in open court by G. A. Worley, his attorney, and moves the court that the judgment herein be arrested, and all further proceedings herein be stayed, pending an investigation by the court of the facts alleged in the suggestion of the insanity of the defendant made by his counsel and on file herein. In support of this motion defendant refers to the affidavit of Dr. O. L. Alexander, attached to and made a part of the said suggestion, of the present insanity of said defendant. And defendant further moves the court that a jury be impanelled to try the issue, under the direction of the court, whether or not this defendant is presently sane, or that said issue be judiciously determined by the court, according to law, before judgment and sentence is rendered and pronounced against this defendant.

G. A. WORLEY,
Attorney for Deft.

This June 5th, 1902.

Which said motion being considered by the court the following order was made: Upon hearing the above mo-

tion it is ordered that the same be and is hereby denied and defendant excepts, the defendant being present in open court.   This 5th day of June, A. D. 1902 .

MINOR S. JONES, (Seal.),

Judge 7th Circuit of Florida.

And thereupon said defendant by his attorneys entered a motion and suggestion of the present insanity of the defendant in the  words and  figures following,  to-wit: "And on this 5th day of June, A. D. 1902, after the verdict of the jury, and before judgment and sentence has been rendered, comes G. A. Worley, as attorney for James O. Williams, and suggests to the court that the said James O. Williams is at the present time insane, and is not capable of judging of his surroundings, and that from mental aberration and insane diseases of the mind the said James O. Williams is mentally incapable of giving any reason why the sentence of this court should or should not be passed upon him, and that the said James O. Williams at this time is affected with mental disease to the extent that he can not be legally sentenced for the reason that he does not know of his surroundings, nor can he judge of the gravity of the offense of which he is convicted, or comprehend surroundings, or the nature of the offense with which he is convicted, which will appear by affidavits hereto attached and marked exhibits A. B. and C.   Wherefore the said James O. Williams, through his attorney, G. A. Worley, moves the court that an investigation may be had as to his present insanity or sanity; and that judgment and sentence be stayed until said sanity or insanity of the said James O. Williams be inquired of and determined as required by law, and therefore prays that a jury may be empanelled for the purpose of inquiring into the sanity or insanity of

James O. Williams v. The State of Florida—Opinion of Court.

the said James O. Williams *as provided by law.*   (Italics our own.)

It is further represented and shown unto this court that the said James O. Williams at the time of plea of not guilty to the charge in the indictment. against him upon which he was tried was not known to be insane by his counsel, and that since said plea of not guilty the said James O. Williams has been discovered to be hopelessly insane, and that he is at the present time hopelessly and utterly insane." Which said motion being considered by the court was overruled and denied in the words and figures following: Motion denied, defendant excepts in open court June 5th, 1902, the accused being present in open court.

                    MINOR S. JONES, (Seal.)
                                    Judge.


                    EXHIBIT "A."


State of Florida,
  County of Dade.

Before me, the subscriber, personally appeared G. A. Worley who, being duly sworn, says that he is the attorney for James O. Williams, representing the said James O. Williams in the case of the State of Florida against the said James O. Williams, charging him with the murder of one Mark Bartleson in the county of Dade and State of Florida; that he is, and has been employed by T. J. Williams, who is the father of James O. Williams, to represent the said James O. Williams in this matter, and that the several statements made in the foregoing sug-

10 S C

gestion and motion to the court in this matter are true to the best of his knowledge and belief .

G. A. WORLEY.

Sworn to and subscribed before
me this 5th day of June, A. D.
1902.

   E. C. DEARBORN,
     Clerk Circuit Court.


EXHIBIT "B."

State of Georgia,
 Tatnall County.

 Personally came before me, J. L. DeLoach, Clerk of the Superior Court, Dr. O. L. Alexander who, being duly sworn, says that he is a practicing physician of 27 years' experience, and that during said time has had experience, in the treatment of nervous and insane diseases; that he has made personal examination of James O. Williams during and since his recent trial at Miami, Florida, and that the said James O .Williams is insane, and not capable of realizing the gravity of the crime with which he is convicted, and that the said insanity is of a permanent and continuing type, being a chronic disease of the mind. This affidavit is made to be used in the trial of the said James O. Williams for lunacy in Dade county, Florida, Now pending.

O. L. ALEXANDER, M. D.

Sworn to and subscribed before
me this 2nd day of June, 1902.

   J. L. DeLOACH,
     Clerk S. C. T. C. Ga.

James O. Williams v. The State of Florida—Opinion of Court.

## EXHIBIT "C."

Georgia, Baldwin County.

Personally appeared before me ,Walter Paine, clerk of the Superior Court of said county, Dr. H. D. Allen who, being first duly sworn, deposes and says that he personally examined J. O. Williams at Miami, Florida, several times during his trial, being the 14th and 22nd of May, 1902, found him suffering from the mental diseases known as chronic delusional insanity, not spasmodic or temporary in its nature. The nature of this disease is progressive in its character, and consequently he must at present be in as bad or worse condition than when examined by me. From the nature of his mental disease in my opinion he is incapable of realizing and comprehending the nature and gravity of the crime of which he is convicted, and he is therefore not a fit subject upon which sentence or judgment can be passed, and if passed he is not mentally capable of knowing the nature and extent of the sentence to be passed upon him. Deponent is the owner and Superintendent of Allen's Invalid Home at Milledgeville, Ga., a sanitarium for the care and treatment of nervous and mental diseases. James O. Williams was received in that institution on June 21st, 1900, and remained there as a patient until Nov. 3rd, 1900. During that period of time deponent treated him personally and gave his case a thorough study. Deponent's diagnosis then was that his was a case of acute delusional insanity.and as the recent examination of him discloses the fact that he is now suffering with some of the same delusions as he was while at the sanitarium above referred to in 1900, confirms deponent in the opinion that he is now suffering with chronic delusional insanity, and is in the opinion of deponent totally irresponsible for his acts,

and does not comprehend the nature and gravity of the offense of which he has been convicted. Deponent is a physician and has had eleven (11) years' experience in the care and treatment of nervous and mental diseases.

H. D. ALLEN, M. D.

Sworn to and subscribed before
me this 3rd day of June, 1902.

WALTER PAINE,
Clerk Superior Court, Baldwin
County, Ga.

We have thus given in full the motions, affidavits in support thereof and orders of court covered by these two assignments of error (15th and 16th), as the questions are new in this State, and are not covered by any express statute, apart from that adopting the common law, Section 59 Revised Statutes.

In Bonds v. State, Martin & Yerger (Tenn.) 142, it is stated in the headnotes: "If a prisoner who has been tried and found guilty of murder allege by his counsel (as a reason why sentence of death should not be pronounced upon him) that he, at that time, is a lunatic, and the judge, upon *his own inspection,* is satisfied the, plea is false, he may pronounce the sentence of the law, without having a jury empanelled to ascertain the fact." In the body of the opinion the court says: "The law on this point is more fully stated in 1 Hawk. P. C. page 3, in the notes, where it is said, "Every person of the age of discretion is presumed of sane memory until the contrary appears, which may be, either by the inspection of the court (1 Hale, 33; *Tr. per pais.* 14; O. B. 1724, No. 4), by evidence given to the jury who are charged to try the indictment (3 Ba. Abr. 21; 1 Hale, 33, 35, 36; O. B. 1124, no. 222), or, by being collateral issue, the fact may be pleaded and replied to one term, and a venire awarded, return-

able *instanter* in the nature of an inquest of office (Inst. 46; Keil. 13; 1 Term 61) ; and this method, in cases of importance, doubt, or difficulty, the court will in prudence and discretion adopt." From this it appears that in spection by the court is one of the legal modes of trying the fact of insanity; and nothing appears in the record of this case to show that the discretion of the court, in adopting the mode pursued, was erroneously exercised. In Laros v. Commonwealth, 84 Pa. St., 200, Chief Justice AGNEW rendered the opinion. In the sixth headnote it is stated: "Where a jury have found a verdict against the plea of insanity, when set up as a defense to conviction, and it is alleged in bar of sentence that insanity has occurred since the verdict, the trial of this fact by a jury is not of right, but rests within the discretion of the court." In the body of the opinion it is said: "The plea at this stage is only an appeal to the humanity of the court to postpone the punishment until a recovery takes place, or as a merciful dispensation; the rights of the prisoner as an offender on trial for an offense are not involved. He has had the benefit of a jury trial, and it is now the court only which must be satisfied on the score of humanity. If the right of trial by jury exist at all, it must exist at all times, no matter how often the plea is repeated alleging insanity occurring since the last vertration of justice. There must be a sound discretion to be exercised by the court. If a case of real doubt arise, a just judge will not fail to relieve his own conscience by submitting the fact to a jury." In the case of Webber v. Commonwealth, 119 Pa. St. 223, 13 Atl. Rep. 427, it is stated to be the rule of the common law: "It is only in cases of doubt as to the sanity of the prisoner at the time of the arraignment, that a preliminary inquiry by a special jury is to be ordered, wherefore neither the asser-

tion of the prisoner and his counsel, nor the production of affidavits, nor the entry of a plea of present insanity upon the record can of themselves suffice to produce the state of doubt which is a *necessary* prerequisite to the ordering of the inquiry. It follows that the judicial mind may be informed by a personal inspection of the prisoner, an examination of him either public or private, inquiries from attending physicians, and others about him and other facts or testimony, but if thereafter the trial judge have no doubt of the prisoner's sanity, he is neither bound nor would he be justified in ordering a preliminary inquest'.' In this case a suggestion of the insanity of the defendant at the time of trial was made, and a jury requested to try that issue. The court refused the request for the special jury, but submited the question of the insanity of the defendant at the time of trial, as well as at the time of the criminal act, to the jury which tried the charge in the indictment, and it was held to be within the discretion of the trial judge to do so. In Croker v. State, 60 Wis. 553, 19 N. W. Rep. 435, it is said: "At common law if a person, after committing a crime became insane, he was not arraigned during his insanity, but was remitted to prison until such incapacity was removed. The same was true where he became insane after his plea of not guilty, and before trial. If, however, there was any doubt as to whether the party was insane, the question was usually tried in a summary way by a jury (1 Hale's P. C. 34, 35, 4 Bl. Comm. 24, 25; 1 Arch. Crim. Pr. & Pl. 22, 23; Com. v. Braley, 1 Mass. 103; 13 Mass. 299; 4 Denio, 19, 20; 7 Adol. & El. 536). In such cases, however, it was in the discretion of the court, whether to try the preliminary question of insanity by a jury, or to adopt some other mode. Ibid." The court then states that the statute of that State was substantially similar to

the common law, and proceeds: "By it if not without it, the court was authorized in a summary manner to make inquisition of the then present insanity of the prisoner, by a jury, or otherwise, as it deemed most proper. The inquisition had was only preliminary to the trial of the offense. It had no bearing upon the guilt or innocence of the prisoner. In Re. J. B., 1 Mylne & Craig, 538. It was entirely collateral to the main trial, which was indefinitely postponed until the prisoner's sanity and capacity to act for herself on such trial should be restored.  *  *  * *." The court then proceeds to say that the right of trial by jury in questions of insanity was not a matter of strict right previous to their constitution, that at common law the Lord Chancellor had jurisdiction to grant the writ or commission of lunacy, and that he was not in any case bound to grant it, but it was a matter in his discretion, quoting a large number of authorities which we have examined to the extent of satisfying our minds that the law is correcty stated. In Tomlinson, Ex parte, 1 Ves. 57, the Lord Chancellor exercised his discretion and refused to issue a commission of lunacy, and made an order that the petition should stand over until the next term in order that a physician should certify what the state of the patient is. In 2 Bish. New Crim. Proc. section 666, it is said: "An insane man can not even plead to an indictment. Therefore if at the arraignment counsel have reason to suppose their client too insane to take his trial they should then make an objection, which it is believed, can be adequately done orally to the court, or the objection may proceed from a third person on affidavit, or the court may take it on its own observations. It is not technically too late at any subsequent stage of the cause prior to the commencement of the trial. When the trial has begun

there are obvious reasons against stopping it, and it is at least within the discretion of the court to let it proceed, and entrust the two issues to the jury together. This question of present insanity is properly, and in practice is generally, submitted to a jury, which may be either one of the regular juries attending on the court, or one specially empanelled for the purpose. But this course is not imperative; the court has the discretion, on its own inspection of the prisoner's mental condition, and without the aid of a. jury's finding, to decline the trial on the main issue, or direct the question to be tried with the plea of not guilty." Recurring again to the case of Bonds v. State, Martin & Yerger, 142, *supra*, we think the rule is there correctly stated, *viz*: that if, after a prisoner has been tried and found guilty, and it is alleged by his council as a reason why he should not be sentenced that he is at that time a lunatic, and the judge *upon his own inspection* of the prisoner and examination of the facts alleged, has *no doubt* of the prisoner's sanity, he is not obliged to submit the question to a jury.

In the case at bar did the Circuit Judge, in refusing to submit the question of the defendant's alleged present insanity to a jury, abuse his discretion? The application was supported by the affidavits of Mr. G. A. Worley, the attorney of the defendant, and of Dr. Allen and Dr. Alexander. All of these gentlemen testified on behalf of the defendant on the trial, their testimony relating to his insanity when the homicide was committed. Dr. Allen's testimony covers about twenty-six pages of the record, and Dr. Alexander's eight pages. Dr. Allen had stated to the jury that the defendant, in his opinion, was permanently insane. Dr. Alexander had married the half sister of the defendant. Dr. Allen had testified before the

jury that the defendant was suffering from chronic delu-
sions of the insane, and that in his opinion his case was
incurable. On the cross-examination he had said that in
cases of delusional insanity about eighty per cent. get
well, and that when he last saw him before the trial
(about eighteen months previous) he had improved to
some extent. He had been asked a hypothetical uestion
and in reply said: "I hardly think I am unbiased enough
to answer that question as an expert, because all my sym-
pathies are with my former patient, and from what I
know of the whole history of this case I might not be able
to answer simply on that question as an expert," and fur-
ther that his sympathies are all with the patient. Dr.
Sollace Mitchell, an expert, had been asked a hypotheti-
cal question which stated the main facts which had been
testified to, in relation to the defendant's sanity at the
time of and prior to the homicidal act, and had said that
in his opinion the defendant was then sane. The defend-
ant had been in business in Miami off and on for several
years; was well known to many persons, and had been
in Miami clerking for Sewall Bros. for about six weeks be-
fore the homicide and had seen and talked with many
persons. Several witnesses testified that during that six
weeks they had seen and conversed with the defendant
and they had observed nothing abnormal in his conduct
or conversation. The question of the defendant's insan-
ity had been submitted to the jury and they found against
him on that question. No new facts, either of conduct or
conversation, were stated in the affidavits. The judge
had had ample opportunity to observe the demeanor of
the defendant during the trial. It was not suggested to
the judge either by his counsel or friends that he was in-
sane during the trial, and was not competent to make his

defense. A very elaborate and able defense was made. Under all these circumstances we cannot say that the judge had cause to doubt the sanity of the prisoner when brought to the bar for sentence, and that he abused his discretion. We find no revisable error in the action of the court under these assignments.

As precedents for proper procedure in swearing the jury and formulating the issue, in case an inquest is ordered to determine whether a prisoner charged with crime be sane or not, we refer to Commonwealth v. Braley, 1 Mass. 102; Commonwealth v. Hathaway, 13 Mass. 299; Queen v. Goode, 7 Ad. & El. 536 (34 E. C. L. 150).

Finding no error, the judgment of the Circuit Court in said cause is hereby affirmed.