CROCKER vs. THE STATE.

*April 16 — May 15, 1884.*

*When writs of error issue: Trial by jury: Inquisition of insanity.*

1. Writs of error are authorized only to review final judgments in actions triable by jury as a matter of right. R. S., secs. 3043, 4724.
2. The constitutional right of trial by jury does not extend to an inquisition of the insanity of an accused person under sec. 4700, R. S.
[3. Whether a party wrongfully found to be insane has any remedy by way of traversing the inquisition, or by appeal, or otherwise, is not determined.]

ERROR to the Circuit Court for *Milwaukee* County.

The case is thus stated by Mr. Justice CASSODAY:

"The plaintiff in error being under arrest and about to be tried for the offense of having written and sent through the post office a threatening letter for the purpose of extorting money, and the court having been informed by the district attorney in writing that there was a probability that the prisoner was then insane, and thereby incapacitated to

act for herself, and ought not, for that reason, to be then put upon her trial, and it being prayed that an inquisition into her mental condition be then and there ordered and had by the court in a summary manner, either by a jury or otherwise, as to the said court might seem meet, as provided by R. S., sec. 4700, the court did then and there order an investigation as prayed for in said application; whereupon a jury was impaneled and sworn for the purpose, and the investigation thereupon proceeded, and at the close thereof the jury, under the charge of the court, found and rendered a verdict that the prisoner was then insane. Thereupon the trial of the offense was, on motion of the district attorney, indefinitely postponed, and the court ordered that the prisoner be confined in one of the hospitals for the insane, as provided by law, to wit, the Milwaukee insane asylum at Wauwatosa, there to be held in the custody and care of the superintendent, as the law directed; and to be received, confined, and treated by such superintendent as other insane persons are kept and treated therein; and that upon her recovery from such insanity the superintendent notify the sheriff thereof, and thereupon deliver her to him to be dealt with according to law. To review that order a writ of error issued out of this court."

For the plaintiff in error the cause was submitted on the brief of *David W. Small.*

*W. C. Williams,* District Attorney, for the defendant in error.

CASSODAY, J. Can such an order be reviewed by this court on writ of error? The learned counsel for the plaintiff in error has made no reference to the question, and no authorities have been cited upon it in behalf of the state. At common law, such writ could only be brought upon a final judgment, or an award in the nature of a final judgment. *Finch v. Ranow,* 1 Ld. Raym., 610; *S. C.,* 3 Salk., 145; *Rex*

*v. Dublin*, 1 Strange, 536; *Jaques v. Cesar*, 2 Saund., 101, note; *Samuel v. Judin*, 6 East, 336; *Tyler v. Hamersley*, 44 Conn., 409; 2 Burrill's Pr., 132; *Hill v. Bloomer*, 1 Pin., 283; *Merrill v. Rollin*, id., 411; *Dean v. Williams*, 2 Pin., 91; *Wheeler v. Scott*, 3 Wis., 362; *Paine v. Chase*, 14 Wis., 653; *Jenks v. State*, 16 Wis., 332; *Eaton v. Gillett*, id., 546; *Crilley v. State*, 20 Wis., 231; 1 Archb. Crim. Pr. & Pl., 623, *199. A writ of error does not lie to review an order. *Paine v. Chase, supra; Jenks v. State, supra; Eaton v. Gillett, supra; Shannon v. State*, 18 Wis., 604. It does not extend to a decree or judgment in an equity case. *Delaplaine v. Madison*, 7 Wis., 407; *Howes v. Buckingham*, 13 Wis., 442; *Costello v. Buch*, 25 Wis., 477. Such was the writ which was preserved by the constitution. Sec. 21, art. I. The statute has not enlarged the functions of the writ. *Delaplaine v. Madison, supra; Smith v. Thorp*, 7 Wis., 514; *Howes v. Buckingham, supra*. In fact, the statute expressly provides that writs of error in criminal cases may issue, and bills of exceptions may be served, noticed, and settled, in the manner and within the time provided by law in civil cases. R. S., sec. 4724. And in civil cases it provides that writs of error may issue to review *final* judgments in actions triable by jury, except actions for divorce. R. S., sec. 3043.

It seems to follow that the order in question being made before any "final judgment" had been pronounced, cannot be reviewed upon this writ of error. The same is true for another reason, even if the order made upon this collateral issue be construed as in the nature of a final judgment. The statutory provision that the writ "may issue to review final judgments in actions *triable by jury*," clearly means actions so triable as a matter of right. Secs. 5, 7, art. I, Const. Since the constitutional right must "remain inviolate," it cannot be taken away in any class of cases where it existed when the constitution was adopted. *Norval v. Rice*, 2 Wis., 29; *Gaston v. Babcock*, 6 Wis., 503; *Stilwell v.*

*Kellogg*, 14 Wis., 461; *Mead v. Walker*, 17 Wis., 189; *Conn. Mut. L. Ins. Co. v. Cross*, 18 Wis., 109; *Dane Co. v. Dunning*, 20 Wis., 210; *Bennett v. State*, 57 Wis., 69. It has been held in several of the states that this right of trial by jury does not extend to proceedings to commit infants to the industrial school or house of refuge. *Ex parte Crouse*, 4 Whart., 9; *Prescott v. State*, 19 Ohio St., 184; *Ex parte Ah Peen*, 51 Cal., 280; *Petition of Ferrier*, 103 Ill., 367. See *Milwaukee Ind. School v. Milwaukee Co.*, 40 Wis., 328. Nor does it extend to the determination of the mere insanity of a party. *Gaston v. Babcock, supra; Shroyer v. Richmond*, 16 Ohio St., 455; *Hagany v. Cohnen*, 29 Ohio St., 82.

At common law, if a person, after committing a crime, became insane, he was not arraigned during his insanity, but was remitted to prison until such incapacity was removed. The same was true where he became insane after his plea of not guilty and before trial. If, however, there was any doubt as to whether the party was insane, the question was usually tried in a summary way by a jury. 1 Hale's P. C., 34, 35; 4 Bl. Comm., 24, 25; 1 Archb. Crim. Pr. & Pl., 22, 23; *Comm. v. Braley*, 1 Mass., 103; *Comm. v. Hathaway*, 13 Mass., 299; *Freeman v. People*, 4 Denio, 19, 20; *Queen v. Goode*, 7 Adol. & El., 536. In such cases, however, it was in the discretion of the court whether to try the preliminary question of insanity by a jury, or to adopt some other mode. *Ibid.* In *Queen v. Goode, supra*, the attorney general prayed an inquest, which was immediately granted, and the investigation was proceeding in a summary manner, when Lord DENMAN, C. J., stopped the prosecution from calling further witnesses, and declared, in effect, that it was unnecessary to ask the prisoner whether he wished to cross-examine the witnesses or to say or prove anything for himself, and virtually charged the jury to return a verdict of insanity, which they did. Thereupon the prisoner was ordered into safe custody until the queen's pleasure should be known.

Our statute has adopted substantially the same practice. It provides that when any person is indicted or informed against for any offense, if the court shall be informed in any manner that there is a probability that such accused person is, at the time of his trial, insane, and thereby incapacitated to act for himself, the court shall, *in a summary manner*, make inquisition thereof, by a jury *or otherwise, as it deems most proper;* and if it shall be thereby determined that such accused person is so insane, his trial for such offense shall be postponed indefinitely, and the court shall thereupon *order* that he be confined in one of the state hospitals for the insane, etc. R. S., sec. 4700. Here the proceedings were strictly in accordance with the statute. The validity of the statute is not questioned. By it, if not without it, the court was authorized, in a summary manner, to make inquisition of the then present insanity of the prisoner, by a jury *or otherwise, as it deemed most proper.* The inquisition had was only preliminary to the trial of the offense. It had no bearing upon the guilt or innocence of the prisoner. *In re J. B.,* 1 Mylne & C., 538. It was entirely collateral to the main trial, which was indefinitely postponed until the prisoner's sanity and capacity to act for herself on such trial should be restored. The statute certainly did not give a jury trial as a matter of right upon such collateral issue. It says " *the court shall* make inquisition thereof in a summary manner, by jury or otherwise, *as it deems most proper.*" Undoubtedly it may, in a proper case, make such inquisition by a medical commission or otherwise. The method of making inquisition is left to the discretion of the court.

So, it appears that a trial by jury of such preliminary and collateral issue was not a matter of strict right prior to the constitution. "There are," said Sir MATTHEW HALE, "two sorts of trials of idiocy, madness, or lunacy: the first, in order to the commitment or custody of the person and his estate, which belongs to the king, either to his own use and

benefit, as in case of idiocy, or to the use of the party,· in case of accidental madness or lunacy; and in order hereunto there issues a writ or commission to the sheriff or escheator, or particular commissioners, both by their own inspection and by inquisition to inquire, and return their inquisition into chancery; and thereupon a grant or commitment of the party and his estate ensues; and in case the party or his friends find themselves injured by the finding him a lunatic or idiot, a special writ may issue to bring the party before the chancellor, or before the king, to be inspected." 1 Hale's P. C., 33. Certainly the chancellor had jurisdiction to grant the writ or commission of lunacy. *Lord Ely's Case*, 1 Ridg. Parl. Cas., 518; *Ridgeway v. Darwin*, 8 Ves. Jr., 65; *In re Monahan*, 9 Ir. Eq., 253. It was issued as "the prerogative of the crown" (*Ex parte Barnsley*, 3 Atk., 171), "the political father and guardian of all his subjects." *Lord Ely's Case, supra*. Hence, where the return to the commission was unsatisfactory to the chancellor, he would quash the same and issue a new commission. *Ex parte Roberts*, 3 Atk., 5; *Ex parte Barnsley*, id., 184; *Ex parte Cranmer*, 12 Ves. Jr., 445; *Ex parte Atkinson*, 1 Jac., 333; *In re Holmes*, 4 Russ. Ch., 182; *In re Bruges*, 1 Mylne & C., 278. "It is a practice by no means uncommon, in cases of lunacy," said Lord Eldon, "that when the lunatic cannot be removed to the jury, and it is inconvenient for the jury to go to the lunatic, *one or two of the jury* examine the lunatic, and report their observations to the rest." *Ex parte Smith*, 1 Swanst., 7. The same cautious chancellor held that the issuing of the commission was in the discretion of the court. *Ex parte Tomlinson*, 1 Ves. & B., 57.

We are not called upon to determine whether a party who is aggrieved by being wrongfully found to be a lunatic has any remedy by way of traversing the inquisition, as formerly (*Ex parte Wragg*, 5 Ves. Jr., 450; *Ex parte Ferne*, id., 833; *Sherwood v. Sanderson*, 19 Ves. Jr., 280; *In re Bridge*, 6 Jur.,

69), or by appeal or otherwise. It is enough to know that a writ of error will not lie.

From what has been said, and the fact that writs of error are only authorized to review final judgments in actions triable by jury *as a matter of right*, it follows that the writ of error was inprovidently granted, and must therefore be dismissed.

*By the Court.*— Ordered accordingly.