STATE EX REL. MATALIK, Petitioner, v. SCHUBERT, Super-
intendent, Respondent.

*No. State 148. Argued December 22, 1972.—Decided February 8,
1973.*

(Also reported in 204 N. W. 2d 13.)

316

For the petitioner there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the respondent the cause was argued by *William A. Platz,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. Three issues are raised by this petition:

1. Did petitioner have a constitutional right to a jury determination on the question of his competency to stand trial?

2. Was petitioner denied due process of law at the hearing which was held to determine his competency to stand trial?

3. Is petitioner now entitled to have proceedings instituted similar to those prescribed by ch. 51, Stats., for civil mental commitments to determine whether he should continue to be committed?

Right to jury determination of incompetency
to stand trial.

*Equal protection.*

Petitioner argues that he has been denied the equal protection of the laws guaranteed him in the state and federal constitutions by being committed to Central State Hospital without a jury determination regarding his competency to stand trial. Petitioner notes that under ch. 51, the civil commitment statute, persons alleged to be mentally ill have a right to a jury trial.[2] The lack of a jury trial to determine his competency to stand trial on a pending criminal charge, petitioner

[2] Sec. 51.03, Stats., provides: "If a jury is demanded by the alleged mentally ill, infirm or deficient patient or by a relative or friend in his behalf, before commitment, the court shall direct that a jury of 6 people be drawn to determine the mental condition of the patient. The procedure shall be substantially like a jury trial in a civil action. The judge may instruct the jurors in the law. No verdict shall be valid or received unless agreed to and signed by at least 5 of the jurors. At the time of ordering a jury to be summoned, the court shall fix the date of the hearing, which date shall be not less than 30 days nor more than 40 days after the demand for a jury is made. In the meantime the court may order the patient temporarily detained in a designated public institution, until the date of hearing, for observation. The court shall submit to the jury the following form of verdict: . . ."

argues, is constitutionally unjustifiable when compared with such civil procedures.

The definitions of "mental illness" and "mental deficiency" found in ch. 51, Stats., make it clear that such incompetency is not dissimilar from that defined in sec. 971.15, wherein no jury trial is mandated and a trial court may "summarily" determine a defendant's competency.[3] As the right to a jury determination is a significant right accorded some who are alleged to be incompetent, it may not be arbitrarily withheld from others and yet meet the mandate of the equal protection clause.[4] Although suggesting it may be a relevant consideration in the evaluation of one's mental condition, the United States Supreme Court recently held in *Humphrey v. Cady* that a person's criminal record does not present a sufficient justification to deny important rights afforded those not having such a record.[5] Here, it appears that the civil definition of mental illness or deficiency might have been utilized to commit petitioner but for the fact that he had a criminal charge lodged against him. In order to justify the material difference in the rights afforded petitioner and others who are alleged to be incompetent to stand trial, *i.e.*, no jury trial, there must be some rational basis for the distinction other than "the arbitrary decision of the state to seek his commitment under one statute rather than the other."[6] Therefore, this court must determine

[3] *Compare* sec. 971.15, Stats., *with* sec. 51.75, art. II (f) and (g), Stats.

[4] *Baxstrom v. Herold* (1966), 383 U. S. 107, 86 Sup. Ct. 760, 15 L. Ed. 2d 620.

[5] (1972), 405 U. S. 504, 92 Sup. Ct. 1048, 31 L. Ed. 2d 394. *See also: Jackson v. Indiana* (1972), 406 U. S. 715, 92 Sup. Ct. 1845, 32 L. Ed. 2d 435.

[6] *Humphrey v. Cady, supra,* 405 U. S. at page 512. *See also: Huebner v. State* (1967), 33 Wis. 2d 505, 528, 147 N. W. 2d 646; *State ex rel. Garner v. Gray* (1972), 55 Wis. 2d 574, 588, 201 N. W. 2d 163.

whether some rational basis, justifying the difference in the rights afforded these two classes of persons who are alleged to be mentally ill, exists.[7]

It has long been the rule of Anglo-American law that an incompetent person should not be forced to face the judicial process during such incompetency. This common-law rule was ably summarized by Blackstone:

". . . Also, if a man in his sound memory commits a capital offence, and before arraignment for it he becomes mad, he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defence? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if after judgment he becomes of nonsane memory, execution shall be stayed: for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution." [8]

This proposition has recently received reaffirmation by the United States Supreme Court in *Pate v. Robinson*,[9] wherein it was held an incompetent person could not be tried for an alleged crime consistently with his constitutional right to a fair trial. Presently, therefore,

---

[7] Petitioner cites the Massachusetts Supreme Judicial Court decision, *Commonwealth v. Druken* (1969), 356 Mass. 503, 254 N. E. 2d 779, for the proposition that the equal protection clause does require a jury trial in the incompetency-to-proceed determination. While this case did not find any rational basis for denying persons alleged to be incompetent to proceed at trial the same safeguards afforded persons who are civilly committed, Massachusetts does not require a jury determination in civil commitments. *Cf.* Annot. Laws of Mass. ch. 123, sec. 5, p. 127 (1972).

[8] 4 Blackstone, *Commentaries* (2 Lewis ed. 1440–1442) *24, *25 (1897). *See also: Youtsey v. United States* (6th Cir. 1899), 97 Fed. 937.

[9] (1966), 383 U. S. 375, 86 Sup. Ct. 836, 15 L. Ed. 2d 815. *See also:* Wis. Rev. Stats. 1878, ch. 191, sec. 4700; *Crocker v. State* (1884), 60 Wis. 553, 556, 19 N. W. 435.

all states permit the suspension of criminal proceedings against an incompetent accused—usually at the trial stage, but also at the sentencing, execution and appeal stages of the criminal process.[10]

The rationale underlying such suspension of criminal proceedings is twofold. First, a defendant's full assistance and cooperation has been traditionally thought essential to developing the "true facts" of the case:

". . . The testimony of other witnesses will constantly be checked against the defendant's own version by his counsel and discrepancies brought to the attention of the court. If he chooses, the accused may take the stand and give the court the benefit of his knowledge of what took place. Through the type of assistance which only a competent accused can provide, the probability that a correct determination will result from the trial is greatly increased."[11]

Second, suspending criminal proceedings against an incompetent defendant is rooted in the "fundamental fairness" doctrine which pervades Anglo-American justice. Thus, only where a defendant is mentally competent will he be able "to exercise effectively the rights which this society extends to persons charged with committing a crime."[12] Thus, for these reasons, it cannot be denied that the procedure spelled out by sec. 971.14, Stats., on the determination of incompetency to proceed, is a critically important fail-safe device for the benefit of accused persons who may not be able to fully cooperate and assist in their defense.

Petitioner's entire equal-protection argument is based on the theory that the jury trial afforded those under sec. 51.03, Stats., must be made available to him because

---

[10] Brakel and Rock, *The Mentally Disabled and the Law* (American Bar Foundation rev. ed. 1971), 408, 409.

[11] *Id.* at page 408.

[12] *Id.*

his commitment under the procedure provided by sec. 971.14 and the civil commitment procedure are essentially the same. This is not the case. The procedure provided for civil commitment under sec. 51.03 is for a permanent commitment, whereas sec. 971.14 contemplates a commitment of a temporary nature. Sec. 971.14 (5) specifically provides that the detention is of a temporary nature "for so long as such condition endures." [13] Emphasizing the temporary nature of the incompetency-to-stand-trial commitment is a very recent pronouncement of the United States Supreme Court in *Jackson v. Indiana*, [14] wherein it was held:

"[A] person charged by a state with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future."

Sec. 51.04 of the civil commitment procedure provides for a ninety-day emergency detention of persons alleged to be mentally ill and this procedure does not, by statute, call for a jury trial. This temporary commitment procedure is more comparable to the temporary commitment procedure under sec. 971.14, than are the permanent civil commitment proceedings provided for under ch. 51. Even if such temporary civil commit-

---

[13] Sec. 971.14 (5), Stats., provides: "If the court determines that the defendant lacks competency to proceed, the proceeding against him shall be suspended and the court shall commit him to the custody of the department to be placed in an appropriate institution of the department for so long as such condition endures. When the court, on its own motion or upon the application of the department, the defendant or the district attorney, determines, after a hearing pursuant to s. 51.11, that the defendant has regained competency to proceed, the proceeding shall be resumed. . . ."

[14] *Supra*, footnote 5, at page 738.

ments require a jury trial,[15] we think there is a rational reason for providing for a procedure without a jury trial in the case of the temporary commitment of persons not considered competent to stand trial under the provisions of sec. 971.14. The purpose of sec. 971.14 is to maximize rather than minimize the rights afforded criminally accused persons. The procedure for declaring an alleged criminal defendant incompetent to stand trial stops the criminal process because the defendant is not mentally competent to look after his own interests and to cooperate in the preparation of his defense at trial. This rational basis for the distinction between the procedures for even a temporary commitment under ch. 51 and under sec. 971.14, leads us to conclude that there is no basis here for claiming the unconstitutional denial of equal protection.

### Due process.

Petitioner argues that his commitment without a jury determination of his incompetency to stand trial deprives him of due process of law. There is no requirement for a jury trial to provide due process. The recent case of *Jackson v. Indiana* (reviewing a comparable Indiana statute) does not mandate a jury trial at the time of the original commitment. The United States Supreme Court has recently commented upon the nature of the due-process clause and its requirements:

"... In short, 'within the limits of practicability,' [*Mullane v. Central Hanover Tr. Co., supra,*] at 318, a state must afford to all individuals *a meaningful op-*

[15] *Lessard v. Schmidt* (D. C. Wis. 1972), 349 Fed. Supp. 1078. The district court concluded "The patient should be informed of the basis for his detention, his right to jury trial ...." 349 Fed. Supp. 1092.

*portunity to be heard* if it is to fulfill the promise of the Due Process Clause." (Emphasis added.) [16]

An opportunity to be heard on the question of one's competency is proffered by sec. 971.14 (4), Stats.[17] At this stage of the proceedings where only a temporary commitment is sought, thereby halting the criminal process which has been instituted against an accused, this hearing, if meaningful, sufficiently complies with the elastic procedural requirements of the due process clause.[18]

### Due process at petitioner's hearing.

However, petitioner contends that he was denied a meaningful hearing prior to his commitment for incompetency to stand trial and was, therefore, deprived of his due process rights. The record of the hearing, wherein petitioner was found incompetent to stand trial and was committed to Central State Hospital, indicates that the district attorney challenged whether petitioner was competent to proceed. The psychiatric report was introduced into evidence and contested by neither petitioner's attorney nor the district attorney. On the basis of this report the trial court found petitioner unfit

[16] *Boddie v. Connecticut* (1971), 401 U. S. 371, 379, 91 Sup. Ct. 780, 28 L. Ed. 2d 113.

[17] Sec. 971.14 (4), Stats., provides: "The defendant's competency to proceed shall be summarily determined by the court. If neither the district attorney nor the counsel for the defendant contest the finding of the report filed pursuant to sub. (2), the court may make the determination on the basis of such report. If the finding is contested, the court shall hold a hearing on the issue."

[18] *See Boddie v. Connecticut, supra,* footnote 16, at page 378: ". . . The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."

to proceed with the trial. The record does indicate that the petitioner did vigorously object to the report and demanded to be tried on the merits.

This hearing was conducted in substantial compliance with sec. 971.14 (4), Stats., which provides:

> "(4) The defendant's competency to proceed shall be summarily determined by the court. If neither the district attorney nor the counsel for the defendant contest the finding of the report filed pursuant to sub. (2) [a medical diagnosis of the defendant's mental condition], the court may make the determination on the basis of such report. If the finding is contested, the court shall hold a hearing on the issue."

This subsection has been substantially the same since it was first adopted in 1878.[19]

The procedure prescribed by sec. 971.14 (4), Stats., ignores any objections which the party alleged to be incompetent may have to the medical report. Only the district attorney and petitioner's counsel may contest the report and thereby bring about a fuller hearing on the merits of the competency issue. Underlying the statutory terms which permit the ignoring of an allegedly incompetent person's objections to the psychiatric report is undoubtedly the feeling that such a person "cannot be the master of his own pleadings."[20] The difficulty with this probably accurate estimation, however, lies in its denial of a full hearing to those persons who do not feel they are incompetent. Pursuant to sec. 971.14 (4), the trial court "summarily" determines an accused's competency to proceed wherever the psychiatric report is not challenged.

We conclude that this summary hearing where a psychiatric report is unchallenged is insufficient to meet the "meaningful hearing" requirements of the due process

---

[19] *Cf.* Wis. Rev. Stats. 1878, ch. 191, sec. 4700.

[20] *See Seidner v. United States* (D. C. Cir. 1958), 260 Fed. 2d 732, 734.

clause. It is insufficient because it provides an alleged incompetent with none of the procedural safeguards assuring an accurate adjudication of incompetency. While it may not often happen that one alleged to be incompetent to stand trial will object to the medical report, the due process clause requires a meaningful hearing where such an objection is made.[21] Certain essentials are required to provide a meaningful hearing. These include the right to an attorney; notice of the hearing which must be promptly held; the right to introduce evidence contradicting the medical report; sworn testimony; and beyond a reasonable doubt as the quantum of proof necessary for the incompetency determination.

This court has previously construed deficient statutes to include constitutionally required provisions. In *Huebner v. State,* a hearing on the necessity of specialized treatment under the Sex Crimes Act was judicially mandated.[22] In *State ex rel. Garner v. Gray* a hearing similar to that required in the Uniform Criminal Extradition Act was judicially mandated to save the Uniform Detainer Act.[23] So here it is our interpretation that under sec. 971.14, Stats., a meaningful hearing must be afforded all criminally accused persons alleged to be mentally incompetent to stand trial who contest the validity of a psychiatric report regarding their mental condition. The minimal essentials of such a hearing must be provided as indicated in order to satisfy the requirements of procedural due process.

### Procedures now required.

Petitioner contends and respondent concedes that the duration of a commitment pursuant to sec. 971.14, Stats.,

[21] *Boddie v. Connecticut, supra,* footnote 16, at pages 377–380. See also: *State ex rel. Garner v. Gray, supra,* footnote 6, at page 584.

[22] *Huebner v. State, supra,* footnote 6, at pages 524–529.

[23] *Supra,* footnote 6.

must be for a period that is temporary in nature—a period only for so long as it takes to determine whether an incompetent person will not soon recover and be able to stand trial. This was decided by the United States Supreme Court in *Jackson v. Indiana.* The court held:

"[A] person charged by a state with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." [24]

*Jackson v. Indiana* involved an incurable mentally defective deaf-mute, illiterate and verbally unable to communicate, who had been accused of crime and committed to a mental hospital after examination by two doctors whose report showed not only that he lacked sufficient comprehension to make his defense but also that there was virtually no chance of recovery from that condition. After over three years of confinement under those commitment proceedings, the United States Supreme Court ruled that the state of Indiana must either institute civil proceedings applicable to indefinite commitment of those not charged with crime or release the defendant.

We consider that a period of six months after commitment has commenced should be long enough to determine whether such a person as petitioner will never recover or will not soon recover his competency so as to be able to stand trial, and if the respondent desires that petitioner be permanently committed, he either commence civil commitment proceedings under ch. 51, Stats., within sixty days from the date of this order, or otherwise release petitioner.

*By the Court.*—Habeas corpus granted to the petitioner and the respondent ordered to release petitioner on or before sixty days from this order unless respon-

---

[24] *Supra,* footnote 5, at page 738.

dent, within such time, commences civil commitment procedures for the commitment of petitioner under the provisions of ch. 51, Stats.