# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2692-CR |
| COMPLETE TITLE: | State of Wisconsin,<br><br>        Plaintiff-Respondent,<br><br>    v.<br><br>Roddee W. Daniel,<br><br>        Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 354 Wis. 2d 51, 847 N.W.2d 855
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 46

| | |
|---|---|
| OPINION FILED: | April 29, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 9, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Kenosha |
|   JUDGE: | Wilbur W. Warren III |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | PROSSER, J. did not participate. |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Anthony J. Jurek*, Middleton, and oral argument by *Anthony J. Jurek*.

For the plaintiff-respondent, the cause was argued by *Tiffany M. Winter*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

An amicus curiae brief was filed by *Kelli S. Thompson*, state public defender, and *Joseph N. Ehmann*, first assistant state public defender, on behalf of the Wisconsin State Public Defender. Oral argument by *Joseph N. Ehmann*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2692-CR
(L.C. No. 2008CF1035)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Respondent,

  v.

Roddee W. Daniel,

      Defendant-Appellant-Petitioner.

**FILED**

**APR 29, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed and cause remanded.*

¶1 ANN WALSH BRADLEY, J. Petitioner, Roddee W. Daniel, seeks review of a published decision of the court of appeals that reversed an order of the circuit court.[1] In a post-conviction hearing, the circuit court concluded that Daniel's defense counsel failed to show by clear and convincing evidence

---

[1] *State v. Daniel*, 2014 WI App 46, 354 Wis. 2d 51, 847 N.W.2d 855 (reversing order of circuit court of Kenosha County, Wilbur W. Warren III, Judge).

that Daniel was incompetent. The court of appeals determined that the circuit court erred because it failed to apply the lower "preponderance of the evidence" burden of proof. Accordingly, it remanded for a new competency hearing.

¶2 Although neither party challenges the court of appeals' determination that the burden of proof here is a preponderance of the evidence, Daniel contends that the court of appeals' decision was erroneous because, upon remand, it permits the circuit court to place the burden to prove incompetency on defense counsel. He asserts that despite the fact that Daniel and his defense counsel disagree about competency, once defense counsel has raised the issue of competency, the burden of proof should be on the State.

¶3 Considering the statute governing competency hearings, the potential conflict of interest in placing the burden of proof on defense counsel, and the relative interests and risks at stake, we determine that once a defense attorney raises the issue of competency at a postconviction hearing, the burden is on the State to prove by a preponderance of the evidence that the defendant is competent to proceed. Accordingly, we affirm the court of appeals and remand to the circuit court to apply the correct standard if Daniel's competency is challenged upon remand.

I

¶4 Daniel has a long history of mental illness. He began treatment for mental illness in 2004 at Rogers Memorial Hospital-Milwaukee. Multiple medications have been prescribed.

¶5 Daniel's treatment at Rogers Memorial ended in September 2008 around the time that he was arrested and charged with first-degree intentional homicide as party to a crime and armed burglary as party to a crime. According to the complaint, 15-year old Daniel and a friend broke into a neighbor's home. Daniel told police that as they looked around for items to take, they noticed a woman asleep in her bed. The woman woke up and started to run away. Daniel stated that his friend ran after her and hit her multiple times with a baseball bat.[2] Then, he and his friend grabbed various items and left. The woman's boyfriend discovered her body the next morning. Daniel was arrested and held at Kenosha County Detention Center (KCDC) pending trial.

¶6 The court granted defense counsel's request that Daniel undergo an evaluation to determine his competency to stand trial. Dr. Collins conducted the evaluation which included an interview with Daniel. Her report indicates that she had trouble engaging Daniel in a goal-directed, rational exchange. However, he did acknowledge that he had been institutionalized at Rogers Memorial because he "was hearing voices" and that he had previously received mental health treatment in connection with panic attacks.

¶7 Dr. Collins' evaluation also included a review of Daniel's medical records from KCDC. Her report indicates that

---

[2] Daniel's friend claimed that it was Daniel who hit the woman.

3

she believed there were discrepancies between some of the mental health complaints Daniel made while at KCDC and staff observations of his behavior. Dr. Collins further observed that while at KCDC a diagnosis of "probable malingering" had been offered. She deermined that there was not enough evidence to support a conclusion that Daniel lacked substantial mental capacity to factually and rationally understand the pending proceeding and aid in his defense. Based on Dr. Collins' report, the circuit court declared Daniel competent to stand trial.

¶8 After a jury trial, Daniel was convicted of the crimes charged. He was sentenced to life in prison without extended supervision. During his subsequent incarceration, the Department of Corrections determined that Daniel suffered from a psychotic disorder and transferred him to the Wisconsin Resource Center for treatment. Daniel's treating psychiatrist at the Resource Center, Dr. Alba, challenged his decisional competency and requested that Daniel be civilly committed pursuant to Chapter 51.

¶9 Following a hearing on the matter, the court ordered Daniel's civil commitment. It determined that medication or treatment would have therapeutic value. It further determined that due to mental illness, Daniel was not competent to refuse psychotropic medication or treatment. Accordingly, the court ordered that medication and treatment could be administered without Daniel's consent during the period of commitment. Dr. Alba later requested an extension of Daniel's civil commitment,

4

which was granted. The court also extended Daniel's deadline for filing a postconviction motion.

¶10  While Daniel was still under civil commitment, defense counsel notified the court, pursuant to State v. Debra A.E., 188 Wis. 2d 111, 523 N.W.2d 727 (1994), that he had good faith reason to doubt Daniel's competency to pursue postconviction relief.  He explained that he had spoken with Daniel multiple times and that during those conversations Daniel equivocated in regard to pursuing postconviction relief, oscillating between a desire to pursue relief and a desire not to pursue relief. Despite a variety of approaches, defense counsel was unable to get Daniel to express any reasoning behind his decisions to pursue or not pursue postconviction relief.

¶11  Defense counsel further explained to the court that since Daniel's conviction, Daniel had been diagnosed as schizophrenic, and had been civilly committed pursuant to Chapter 51.  He informed the court that his privately obtained psychologist, Dr. Cumming, had evaluated Daniel and determined that Daniel was not competent to seek postconviction relief. Accordingly, defense counsel moved the court for a finding that there was reason to believe that Daniel was incompetent and asked the court to rule regarding Daniel's competency to seek postconviction relief.

¶12  Attached to defense counsel's submission was a letter from Dr. Cummings.  His letter indicates that he met with Daniel after reviewing Daniel's records.  During their first meeting, it was clear that Daniel lacked the capacity to understand the

5

purpose of the visit or that Dr. Cummings' findings would be used to aid Daniel's defense. During the second meeting, Daniel told Dr. Cummings that he "didn't even know what an appeal was." Based on Daniel's records and these interviews, Dr. Cummings concluded to a reasonable degree of professional certainty that Daniel was not competent to understand the appeal process or make decisions about legal matters.

¶13 The court appointed a psychologist, Dr. Rawski, to evaluate Daniel, but Daniel refused to meet with him. Therefore, Dr. Rawski was unable to offer an opinion to a reasonable degree of professional certainty as to Daniel's then current state of competency to participate in legal proceedings. He recommended that Daniel be transferred to a state psychiatric institute for an inpatient assessment.

¶14 Following Dr. Rawski's recommendation, the court ordered the State to transfer Daniel to a state psychiatric institute for evaluation of his competency. There, he was examined by Dr. Phelps, a forensic psychiatry fellow. Dr. Phelps determined that Daniel's behaviors were not the product of mental illness, but rather the result of a characterological disorder. Although he acknowledged the possibility that Daniel had a major mental illness, Dr. Phelps observed that Daniel had denied symptoms of mental illness and, with one exception, had not exhibited signs or symptoms of mental illness.

¶15 Dr. Phelps further acknowledged the possibility that the medications Daniel took were effectively treating a mental illness. However, observing that Daniel had previously

6

demonstrated the capacity to stand trial and that he did not demonstrate symptoms of a condition that would preclude his capacity, Dr. Phelps concluded that Daniel had substantial mental capacity to understand the proceedings and assist in his own defense.

¶16 After the evaluations were complete, the court held a competency hearing. At the start of the hearing, the circuit court asked Daniel if he believed he was competent to proceed. Daniel replied "Yeah." The court then asked Daniel if he believed he understood what was involved in making a decision about whether to appeal. Daniel again responded "Yeah." Thereafter, defense counsel asked Daniel if he could explain what it means to appeal a conviction. Daniel responded "No." Counsel then asked Daniel "what happens if you don't appeal?" Daniel replied "I can get charged with a crime."

¶17 Based on Daniel's statement that he was competent, the court made an initial determination of competency. It placed the burden on defense counsel to show that Daniel was incompetent. To meet his burden, defense counsel presented the testimony of Dr. Alba, Dr. Phelps, Dr. Collins, Daniel's social worker at the Wisconsin Resource Center, and Dr. Cummings. He also presented the reports from Dr. Alba, Dr. Phelps, and Dr.

Cummings, Daniel's medical records from Rogers Memorial, and Daniel's discharge summary from Rogers Memorial.[3]

¶18 The circuit court opined that based on Wis. Stat. § 971.14(4)(b) (2011-12)[4], if the defendant claims to be competent, the defendant shall be found competent unless the State proves by clear and convincing evidence that the defendant is not competent. The court observed that in this case, the State agreed with Daniel that he was competent and so it was not in the position to disprove his assertion of competency. However, the court determined that the clear and convincing standard still should be applied: "the standard should be the same for establishing incompetence, notwithstanding the party is other than the State who is asserting it, and that's the basis which this decision will be framed." It then concluded that defense counsel had failed to show by clear and convincing evidence that Daniel was incompetent.

¶19 On appeal, the court of appeals observed that the circuit court could allocate the burden of persuasion to the defendant or defense counsel in a postconviction competency proceeding. State v. Daniel, 2014 WI App 46, ¶2, 354 Wis. 2d

---

[3] The court gave the parties time after the hearing to submit written closing arguments. During that time, Daniel submitted a hand-written note, stating that he wanted to plead guilty. It states: "this is Roddee DanieL i want to plead Guilty for the murder of [C.W.] I want to plead Guilty. Im admitting that I killed [C.W.]."

[4] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

51, 847 N.W.2d 855. However, the court of appeals determined that a circuit court must utilize the lower "preponderance of the evidence" burden of proof when doing so. Id. Because the circuit court had applied an incorrect burden of proof, the court of appeals reversed and remanded. Id. It further declared that if Daniel's competency is questioned upon remand, the circuit court shall address the issue de novo. Id.

II

¶20 At issue in this case is who bears the burden of proof at a postconviction competency hearing when defense counsel and the defendant disagree on competency.[5] In this case of first impression in our state, we examine statutory authority and prior case law. Ultimately, this issue presents a question of law which this court reviews independently of the decisions rendered by the circuit court and the court of appeals. Acuity Mut. Ins. Co. v. Olivas, 2007 WI 12, ¶31, 298 Wis. 2d 640, 726 N.W.2d 258.

III

¶21 To provide context for our discussion, we begin with a brief overview of competency. For purposes of criminal trials, competency refers to the defendant's "present mental capacity to

---

[5] The petition for review presented this as two issues: who bears the burden of proof and what is the correct procedure to follow when a defendant and defense counsel disagree about a defendant's competency. However, in the parties' arguments the second issue was subsumed into the first. Accordingly, we address them as one issue.

understand the proceedings and assist in his or her defense." Wis. Stat. § 971.14(3)(c); <u>see also</u> <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960) ("the test [for competency] must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him."); <u>State v. Byrge</u>, 2000 WI 101, ¶27, 237 Wis. 2d 197, 614 N.W.2d 477 ("a defendant is incompetent if he or she lacks the capacity to understand the nature and object of the proceedings, to consult with counsel, and to assist in the preparation of his or her defense.").

¶22 Courts have long followed the rule that incompetent defendants should not be forced to face criminal proceedings during their incompetency. <u>State ex rel. Matalik v. Schubert</u>, 57 Wis. 2d 315, 321, 204 N.W.2d 13 (1973).  Wisconsin codified this rule in 1878, and it currently appears in our statutes at Wis. Stat. § 971.13.[6]

---

[6] Wisconsin Stat. § 4700 (1878) stated:

> When any person is indicted or informed against for any offense, if the court shall be informed, in any manner, that there is a probability that such accused person is, at the time of his trial, insane, and thereby incapacitated to act for himself, the court shall, in a summary manner, make inquisition thereof, by a jury or otherwise, as it deems most proper; and if it shall be thereby determined, that such accused person is insane, his trial for such offense shall be postponed indefinitely . . . .

The current Wis. Stat. § 971.13(1) provides: "No person who lacks substantial mental capacity to understand the proceedings

(continued)

10

¶23 As Justice Kennedy has succinctly explained, competence to stand trial is integral to a number of other constitutional rights:

> Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.

Riggins v. Nevada, 504 U.S. 127, 139-40 (1992) (Kennedy, J., concurring). Thus, the Supreme Court has stated that the prohibition on the prosecution of incompetent individuals is "fundamental to an adversary system of justice," Drope v. Missouri, 420 U.S. 162, 172 (1975), and the conviction of an accused person while he is legally incompetent violates due process, Cooper v. Oklahoma, 517 U.S. 348, 354 (1996). See also State v. Garfoot, 207 Wis. 2d 214, 221, 558 N.W.2d 626 (1997) (observing that the prohibition is an issue of "fundamental fairness").

¶24 Consistent with those statements, the Supreme Court has further determined that "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Drope, 420 U.S. at 172; see also State v. Wanta, 224 Wis. 2d 679, 692, 592 N.W.2d 645 (Ct.

---

or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

11

App. 1999) ("competence to stand trial in a criminal proceeding [is] a fundamental right requiring due process protections").

¶25 Wisconsin's codified procedures to protect a defendant from being tried while incompetent can be traced back to 1878. Wis. Stat. § 4700 (1878). The current procdures are found in Wis. Stat. § 971.14. Under the statute, if there is reason to doubt a defendant's competency, the court "shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate to examine and report upon the condition of the defendant." Wis. Stat. § 971.14(2)(a). Copies of the report are delivered to the State, the defendant, and defense counsel. Wis. Stat. § 971.14(4)(a). If each waives the opportunity to present evidence on the issue, "the court shall promptly determine the defendant's competency." Wis. Stat. § 971.14(4)(b).

¶26 The statute directs that in the absence of waivers, the court shall hold an evidentiary hearing on the defendant's competency. Wis. Stat. § 971.14(4)(b). It describes the hearing as follows:

> At the commencement of the hearing, the judge shall ask the defendant whether he or she claims to be competent or incompetent. If the defendant stands mute or claims to be incompetent, the defendant shall be found incompetent unless the state proves by the greater weight of the credible evidence that the defendant is competent. If the defendant claims to be competent, the defendant shall be found competent unless the state proves by evidence that is clear and convincing that the defendant is incompetent. If the defendant is found incompetent and if the state proves by evidence that is clear and convincing that the defendant is not competent to refuse medication or

12

treatment, under the standard specified in sub. (3)
(dm), the court shall make a determination without a
jury and issue an order that the defendant is not
competent to refuse medication or treatment for the
defendant's mental condition and that whoever
administers the medication or treatment to the
defendant shall observe appropriate medical standards.

Wis. Stat. § 971.14(4)(b).

¶27 To protect the right to these competency proceedings, in State v. Johnson, 133 Wis. 2d 207, 395 N.W.2d 176 (1986), the Wisconsin Supreme Court placed a duty on defense counsel to raise the issue of defendant's competency whenever there is reason to doubt it. In that case, despite strong indications of defendant's incompetency, defense counsel had made a "strategic decision" to not raise the issue prior to or during defendant's criminal trial. Id. at 214. The question before the court was whether counsel's failure to do so constituted representation which fell below an objective standard of reasonableness. Id. at 218.

¶28 In its analysis, the Johnson court explained that the procedure for determining competency laid out in Wis. Stat. § 971.14 is "a critically important fail-safe device for the benefit of accused persons who may not be able to fully cooperate and assist in their defense." Id. at 218-19 (quoting Matalik, 57 Wis. 2d at 322). It further observed that the protection is illusory if, when there is a reason to doubt defendant's competency, neither the court nor counsel seek the procedures provided by the State for determining competency. Id. at 219. The court held that "where defense counsel has a reason to doubt the competency of his client to stand trial, he

must raise the issue with the trial court" and "[t]he failure to raise the issue of competency makes the counsel's representation 'fall below an objective standard of reasonableness.'" Id. at 220.[7]

¶29 The Wisconsin Supreme Court subsequently recognized that the right to a competency determination extends to postconviction proceedings. In Debra A.E., 188 Wis. 2d 111, defense counsel was unable to determine whether the defendant was willing to accept the risks of pursuing postconviction relief because the defendant would not speak to him. Accordingly, he requested a competency proceeding, which the circuit court denied. Id. at 121-22.

¶30 On review, the Wisconsin Supreme Court observed that the decisions to pursue postconviction relief and what objectives to pursue must be made by the defendant, not defense counsel. Id. at 125. Because those tasks were required of the defendant, the court determined that a defendant "is incompetent to pursue postconviction relief under sec. 809.30, Stats. 1991-

---

[7] In 1984 the ABA adopted a standard substantially similar to that announced in State v. Johnson, 133 Wis. 2d 207, 395 N.W.2d 176 (1986). ABA Criminal Justice Mental Health Standard 7-4.2(c) provides that:

> Defense counsel should move for evaluation of the defendant's competence to stand trial whenever the defense counsel has a good faith doubt as to defendant's competence. If the client objects to such a motion being made, counsel may move for an evaluation over the client's objection.

This standard remains in effect today.

14

92, when he or she is unable to assist counsel or to make decisions committed by law to the defendant with a reasonable degree of rational understanding." Id. at 126.

¶31 The Debra A.E. court then proceeded to prescribe the process for postconviction competency proceedings. Id. at 131. It stated that if the State or defense counsel has a good faith reason to doubt a defendant's competency, counsel should advise the court and move for a ruling on competency. Id. The circuit court may also raise the issue of reason to doubt a defendant's competency sua sponte. Id. If there is reason to doubt a defendant's competency, the circuit court may hold a hearing. Id. at 132. "In conducting any hearing the circuit court should be guided by sec. 971.14(4), Stats. 1991-92, to the extent feasible." Id.

¶32 Having set forth the background on competency proceedings, we turn now to the issue of who bears the burden of proof at a postconviction competency hearing when the defendant and defense counsel disagree about competency. We acknowledge that, as a general matter, the burden of proof is frequently assigned to the moving party. See, e.g., State v. West, 2011 WI 83, ¶65, 336 Wis. 2d 578, 800 N.W.2d 929; Larry v. Harris, 2008

15

WI 81, ¶50, 311 Wis. 2d 326, 752 N.W.2d 279.[8] However, we are not convinced that the general rule applies to this case. Here, defense counsel, as an officer of the court, was obligated to alert the court of his doubt about competency under Johnson, 133 Wis. 2d 207. Thus, we decline to view the fulfillment of this duty in the same manner as a typical motion.

¶33 As the parties concede, there is currently no statute directly governing postconviction competency proceedings.[9]

---

[8] There are several situations in which this rule does not apply. See, e.g., State v. Subdiaz-Osorio, 2014 WI 87, ¶73, 357 Wis. 2d 41, 849 N.W.2d 748 (after defendant raised the issue, the burden was on State to show that exigent circumstances justified a warrantless search); State v. Jerrell C.J., 2005 WI 105, ¶17, 283 Wis. 2d 145, 699 N.W.2d 110 (upon defendant's suppression motion, the burden was on the State to prove confession was voluntary); State v. Jiles, 2003 WI 66, ¶23, 262 Wis. 2d 457, 663 N.W.2d 798 (where the defendant moved to suppress various admissions, the burden was on the State to show that the defendant received and understood his Miranda warnings). Indeed, under Wis. Stat. § 971.14(4)(b) when the defense counsel raises the issue of competency at defendant's request, the burden is explicitly on the State to prove competency.

[9] We have previously determined that Wis. Stat. § 971.14, by its terms, "govern[s] competency determinations only through the sentencing stage of a criminal trial." State v. Debra A.E., 188 Wis. 2d 111, 128 n.14, 523 N.W.2d 727 (1994). As Debra A.E. explained, "[t]his conclusion follows from reading sec. 971.14 in its entirety and with sec. 971.13, as well as from the legislative history underlying these two sections." Id.

The legislative history reveals that the drafters of the proposed legislation were mindful that Wis. Stat. § 971.14 left unaddressed incompetency in postconviction proceedings:

> [T]he Committee had not devoted sufficient attention to how to handle the case of a defendant who is incompetent to assist counsel in post-conviction

(continued)

16

Following Debra A.E., we look to Wis. Stat. § 971.14(4) for guidance.

¶34   Wisconsin Stat. § 971.14(4)(b) defines the burden in terms of the defendant's position.  If the defendant asserts competency, the State must prove incompetency by clear and convincing evidence and if the defendant asserts incompetency, the State must prove competency by the greater weight of the credible evidence:

> At the commencement of the hearing, the judge shall ask the defendant whether he or she claims to be competent or incompetent. If the defendant stands mute or claims to be incompetent, the defendant shall be found incompetent unless the state proves by the greater weight of the credible evidence that the defendant is competent. If the defendant claims to be competent, the defendant shall be found competent unless the state proves by evidence that is clear and convincing that the defendant is incompetent.

---

proceedings.  To try to address this in a general competency statute was opening Pandora's box . . . the issue of competency ought to be the defendant's right to raise up to the point of the imposition of sentence but not afterwards. . . .  The competency statute should be limited to proceedings up to and including sentencing.

Judicial Council Insanity Defense Committee Summary of Proceedings, April 24, 1981, at 4.

Currently a bill is pending in the legislature that would address this hole in our statutes: Section 1149 of Assembly Bill 90 (2015) proposes the creation of Wis. Stat. § 975.39, entitled "Competency to pursue postconviction relief," which delineates how questions of competency should be addressed during postconviction proceedings.

Wis. Stat. § 971.14(4)(b) (emphasis added).[10]

¶35 The statute does not appear to contemplate the scenario where the State takes the same position as the defendant and in contrast it is defense counsel who is questioning competency. However, we find it informative that regardless of the scenario, the statute places the burden of proof on the State. This reflects the legislature's policy choice and we see no reason to alter this statutory approach. Thus, the statute's framework suggests that when the issue of competency has arisen, and the State wants to proceed, the State will bear the burden of proving competency.

¶36 This interpretation of the statute is consistent with our prior description of the statute's procedures. In Byrge, 237 Wis. 2d 197, ¶29, we stated that a court will follow the procedures of Wis. Stat. § 971.14 if there is reason to doubt a defendant's competency to proceed. We explained that a reason to doubt competency can be raised by either party or by the court. Id. We observed that once a reason to doubt competency has been raised, the court will appoint an examiner to conduct a competency examination and, absent a waiver, will hold a competency proceeding. Id., ¶30. Then, without reference to

---

[10] As the court of appeals observed, "[t]he differing burdens of proof at the trial stage serve the twin due process goals of protecting an incompetent defendant's right not to be tried while incompetent and the preconviction defendant's right to liberty by reducing the risk of committing a competent person." Daniel, 354 Wis. 2d 51, ¶8 n.4 (citing State v. Wanta, 224 Wis. 2d 679, 695, 592 N.W.2d 645 (Ct. App. 1999)).

who raised the issue of competency, we stated that "[t]he court must find the defendant incompetent unless the State can prove, by the greater weight of the credible evidence, that the defendant is competent." Id.[11]

¶37 Admittedly, Wis. Stat. § 971.14 does not directly answer the question of who bears the burden of proof when a defendant disagrees with defense counsel regarding competency. Further, as stated above, the statute does not directly govern competency hearings during postconviction proceedings and is referred to solely as guidance. Our prior interpretation of that statute, however, supports a conclusion that regardless of whether it is the defendant or defense counsel that raises competency, once the issue is raised, the burden is on the State.

¶38 This conclusion is further supported by the untenable result of the alternative procedure. Were we to place the burden of proving incompetency on defense counsel when defendant asserts competency it would create a conflict between an attorney's duty as an advocate and an attorney's duty as an officer of the court.

¶39 Attorneys' obligations to their clients are set forth in the Supreme Court Rules. One of the primary obligations is

---

[11] The United States Supreme Court has likewise read Wis. Stat. § 971.14(4)(b) as "requir[ing] the prosecutor to prove the defendant's competence to stand trial once a question about competency has been credibly raised." Cooper v. Okalahoma, 517 U.S. 348, 361-62 and n.18 (1996).

19

that of confidentiality. Supreme Court Rule 20:1.6(a) prohibits an attorney from disclosing information relating to representation without a client's consent:

> A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in pars. (b) and (c).[12]

---

[12] SCR 20:1.6(b)-(c) are not relevant here. They state:

(b) A lawyer shall reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to prevent the client from committing a criminal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm or in substantial injury to the financial interest or property of another.

(c) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:

(1) to prevent reasonably likely death or substantial bodily harm;

(2) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;

(3) to secure legal advice about the lawyer's conduct under these rules;

(4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to

(continued)

20

SCR 20:1.6(a).

¶40 The importance of this rule is stressed by the official comments to SCR 20:1.6, which describe it as "fundamental" to the attorney-client relationship. S.C.R. 20:1.6, ABA Comment 2; see also Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n, 2011 WI 36, ¶100, 333 Wis. 2d 402, 797 N.W.2d 789 ("Maintaining confidentiality of information relating to representation is a fundamental principle in the attorney-client relationship."). The obligation to keep client communications secret is further protected by Wis. Stat. § 905.03(2) which grants a client the privilege to refuse disclosure of communications with the client's attorney.

¶41 In State v. Meeks, 2003 WI 104, 263 Wis. 2d 794, 666 N.W.2d 859, this court observed the potential conflict between an attorney's duty to a client to maintain confidentiality and an attorney's duties as an officer of the court under Johnson, 133 Wis. 2d 207. Meeks involved a competency hearing at which the State offered the testimony of the defendant's former attorney. Id., ¶7. Over defense counsel's objection, the former attorney testified about her opinions, perceptions, and impressions of the defendant's competency. Id., ¶¶7-8.

---

respond to allegations in any proceeding concerning the lawyer's representation of the client; or

(5) to comply with other law or a court order.

SCR 20:1.6(b)-(c).

¶42 On review, this court determined that the former attorney's testimony revealed confidential information protected by SCR 20:1.6(a) and Wis. Stat. § 905.03(2). Id., ¶40. It stated that "it is difficult, or nearly impossible, for an attorney to testify regarding an opinion of the client's competency to proceed without violating the attorney-client privilege." Id., ¶37. It further explained that, "[a]n attorney's opinion of a client's mental competency is based largely upon private communications with the client." Id., ¶40.

¶43 Admittedly, the circumstances in Meeks differ from the facts presented in this case. Meeks addressed a former attorney's testimony at a competency hearing as opposed to present counsel raising the issue of competency. Nevertheless, Meeks provides guidance through its remarks on the interplay between an attorney's duty as an officer of the court and the attorney-client privilege. In response to arguments about the duty under Johnson, 133 Wis. 2d 207, the court held that "the former attorney's duty as an officer of the court does not, under the circumstances set forth herein, trump the attorney-client privilege." Id., ¶43. The court then explained that Johnson's requirements were limited to merely raising the issue of competency:

> An attorney's duty under Johnson demands a very narrow and limited breach of the attorney-client privilege. The attorney is merely obligated to 'raise the issue [of competency] with the trial court.' There is no requirement that the attorney testify about his or her reasons for raising the issue or the opinions,

22

perceptions, or impressions that form the basis for his or her reason to doubt the client's competence.

Id., ¶46.

¶44 There is an obvious difference between raising an issue and having to prove it. Meeks instructs that an attorney's duties under Johnson are limited to the former. Were we to put the burden of proof on defense counsel, it would require more, upsetting the delicate balance that we laid out in Meeks. The "limited breach" of attorney-client privilege necessary to fulfill the Johnson obligation would turn to an open door, requiring attorneys to divulge significant information gained through private communications with their clients. Such a result is unpalatable and militates in favor of placing the burden on the State.

¶45 A consideration of the relative interests at stake in postconviction competency hearings further suggests that the burden of proving competency should be on the State. Burdens of proof "reflect and protect social values. Courts must reduce the risk facing the party that has an interest of 'transcending value' by placing the burden of proof on the other party." Benjamin James Vernia, The Burden of Proving Competence to Stand Trial: Due Process at the Limits of Adversarial Justice, 45 Vand. L. Rev. 199, 226 (1992) (citing Speiser v. Randall, 357 U.S. 513, 525 (1958)); see also Santosky v. Kramer, 455 U.S. 745, 757 (1982) ("[s]tandards of proof . . . are shaped by the risk of error inherent in the truth-finding process"); Addington v. Texas, 441 U.S. 418, 423 (1979) ("The standard

23

serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.").

¶46 An erroneous decision that a defendant is competent implicates weighty interests of the defendant in postconviction proceedings. Such an error would substantially hinder a defendant's ability to pursue postconviction relief or an appeal because defense counsel's ability to act without direction from a client is limited. Ultimate decisions regarding the objective of representation, and whether to undertake a postconviction proceeding or an appeal are left solely to the client. Debra A.E., 188 Wis. 2d at 125-26; see also SCR 20:1.2 ("a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued."). Accordingly, in some circumstances, an erroneous decision that a defendant is competent could prevent a defendant from seeking postconviction relief or filing an appeal altogether, affecting the defendant's right to appeal a criminal conviction.

¶47 In contrast, an erroneous decision that a defendant is incompetent will have little impact on the State. As indicated by the procedures identified in Debra A.E., the only impact on the State of a defendant being declared incompetent is a delay of the postconviction proceedings. 188 Wis. 2d at 134 (stating "defense counsel may request a continuance or enlargement of time for filing the necessary notices or motions for

24

postconviction relief" and permitting defendants who regain competency to raise issues that could not have been raised earlier due to incompetency). Further, in many cases, no delay will even occur. Id. at 133-34 (directing defense counsel to initiate or continue to seek relief on defendant's behalf where the defendant's assistance and decisionmaking are not necessary and there is no risk to the defendant). Thus, an erroneous finding of incompetency will place little burden on the State.

¶48 Balancing the risk to a defendant of losing the ability to seek postconviction relief or file an appeal against the risk of the State having to face a delay in an appeal or postconviction proceeding, we conclude that the potential consequences of error additionally suggest that the burden in a postconviction competency hearing be placed on the State once the issue has been raised.

¶49 We decline to adopt the State's suggestion that competency be presumed at a postconviction hearing when the defendant was previously determined to be competent to stand trial. Competency is not static. As we observed in Meeks, "[g]iven the nature of mental illness, a defendant may have been competent during a prior proceeding, but incompetent now, and vice versa." 263 Wis. 2d 794, ¶50.

¶50 Further, competency has a different meaning in different circumstances. Compare Debra A.E., 188 Wis. 2d at 126 (At a postconviction proceeding a defendant is incompetent to pursue postconviction relief "when he or she is unable to assist counsel or to make decisions committed by law to the defendant

25

with a reasonable degree of rational understanding.") with Byrge, 237 Wis. 2d 197, ¶27 ("a defendant is incompetent [to stand trial] if he or she lacks the capacity to understand the nature and object of the proceedings, to consult with counsel, and to assist in the preparation of his or her defense."). Thus, the fact that a defendant was deemed competent to stand trial should not create a presumption that the defendant is competent at a later date when the same defendant pursues postconviction relief.

IV

¶51 In this case, defense counsel raised reason to doubt defendant's competency. In response, the State contended that the defendant was competent. The burden should have been on the State to prove defendant's competency by a preponderance of the evidence. The circuit court, however, placed the burden on defense counsel to prove incompetency by clear and convincing evidence and determined that defense counsel did not meet that burden.

¶52 As we stated in Byrge, 237 Wis. 2d 197, ¶4, "[t]he findings of a circuit court in a competency to stand trial determination will not be upset unless they are clearly erroneous because a competency hearing presents a unique category of inquiry in which the circuit court is in the best

position to apply the law to the facts."[13]   In this case, however, the circuit court applied the wrong law by incorrectly placing the burden on defense counsel to prove incompetency by clear and convincing evidence.  Because we agree with the court of appeals that it is unclear whether the circuit court would have reached the same result had it applied the correct burden, we remand with the instruction that if Daniel's competency remains at issue, a new competency hearing be conducted.

V

¶53  In sum, considering the statute governing competency hearings, the potential conflict of interest in placing the burden of proof on defense counsel, and the relative interests and risks at stake, we determine that once a defense attorney raises the issue of competency at a postconviction hearing, the burden is on the State to prove by a preponderance of the evidence that the defendant is competent to proceed. Accordingly, we affirm the court of appeals and remand the cause to the circuit court to apply the correct standard if Daniel's competency is still challenged.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

¶54  Justice DAVID T. PROSSER did not participate.

---

[13] Although State v. Byrge, 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477, addressed competency to stand trial we see no reason to apply a different standard to a decision regarding competency for a postconviction proceeding.