COURT OF APPEALS
DECISION
DATED AND FILED

November 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP632-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2009CF136

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

ANDRE L. SCOTT,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  DAVID L. BOROWSKI, Judge.  *Order affirmed in part, reversed in part and cause remanded with directions*.

Before Brash, P.J., Blanchard and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Andre L. Scott appeals the judgment convicting him, following a jury trial, of two counts of battery, disorderly conduct, and kidnapping.  He also appeals the postconviction order denying him relief regarding his competency at trial and at sentencing.[1]

¶2    Scott argues that the trial court violated his Fourteenth Amendment right to procedural due process by failing to conduct a competency hearing *sua sponte* during the trial and at sentencing because the record of those proceedings shows reason to doubt Scott's competence during those proceedings.

¶3    A court must order a competency exam when there is "reason to doubt a defendant's competency to proceed."  WIS. STAT. § 971.14(1r)(a) (2017-18).[2]  We conclude that the trial court did not erroneously exercise its discretion in finding that there was no reason to doubt Scott's competency at trial; however, we conclude that it did erroneously exercise its discretion in finding that there was no reason to doubt Scott's competency at sentencing and, therefore, the trial court was obligated to order a competency examination prior to proceeding to

_____

[1] With the State's agreement, the trial court granted Scott's request in his postconviction motion for amendment of the judgment so that it was consistent with the trial court's oral pronouncement at sentencing.  That part of the postconviction order which was favorable to Scott is not an issue on appeal.

While Scott appeals from both a judgment and an order, we address only the order for the reasons set forth in this opinion.

The Honorable David L. Borowski presided over the trial and sentencing, and issued the postconviction decision and order currently on appeal.  The Honorable Jeffrey A. Kremers presided over some postconviction proceedings involving questions of Scott's postconviction competency.  We refer to Judge Borowski as the trial court and Judge Kremers as the circuit court.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

sentencing. Accordingly, we reverse that portion of the postconviction order regarding Scott's competency at sentencing and remand the matter for the trial court to determine whether there can be a meaningful retrospective competency hearing regarding Scott's competency at the sentencing. If a meaningful hearing cannot be conducted, the trial court shall vacate the sentence and proceed with a new sentencing hearing.[3] We affirm the postconviction order regarding Scott's competency at trial.

## BACKGROUND

¶4 Sometime in the first half of December 2008, C.S., Scott's girlfriend at the time, broke up with him. At the time of the breakup, the couple had been living together for about a year.

¶5 C.S. moved into an apartment with her sister, C.H., and after two incidents when Scott showed up at C.H.'s apartment looking for C.S., the State charged Scott with three counts of battery, one count of disorderly conduct, and one count of kidnapping. The battery charges arose out of allegations in the complaint that on December 29, 2008, Scott punched C.S. and her siblings, and the disorderly conduct charge and the kidnapping charge arose out of allegations that on January 4, 2009, Scott tracked C.S. down at a nearby McDonald's, confined C.S. in a storage locker for several hours, and then took C.S. to his sister's house against C.S.'s will.

---

[3] If, at the time, of a new sentencing hearing, there is a competency issue, the trial court shall address that issue prior to conducting a new sentencing hearing.

¶6     At the January 23, 2009 pretrial conference, the parties agreed that there was reason to doubt Scott's competency, and the trial court ordered a competency evaluation. Pursuant to the court's order, Brooke Lundbohm, Psy.D., with the Wisconsin Forensic Unit, examined Scott and filed a competency report with the court.[4] In the report dated February 24, 2009, Lundbohm diagnosed Scott with adjustment disorder not otherwise specified with mixed disturbance by emotions and conduct, and a secondary diagnosis of psychotic disorder not otherwise specified by history. The report stated that Scott reported that he had discontinued psychotropic medications one to two weeks prior to the clinical interview. The report opined that "Mr. Scott is presently competent to proceed."[5]

¶7     At a February 27, 2009 hearing, the parties stipulated to the report and its finding that Scott was competent. The record reflects that the trial court asked Scott on the record if he had reviewed the report, talked to trial counsel about the report, and asked if Scott understood the report. Scott said that he had. When the trial court asked Scott if he believed he was competent, Scott said that he believed he was competent. The trial court then found that Scott was competent to proceed to trial.

¶8     The case was tried to a jury from August 31, 2009, through September 3, 2009. Scott waived his right to remain silent and chose to testify in his own defense. During the trial, neither trial counsel, the prosecutor, nor the trial

---

[4] Lundbohm is a postdoctoral forensic psychology fellow. The report was also reviewed and approved by Dr. Kenneth Smail, also of the Wisconsin Forensic Unit.

[5] The report also states that on January 31, 2009, Scott was reportedly prescribed antidepressant medications, and that jail/House of Correction (HOC) records indicated his thoughts and behaviors then stabilized so that he was transferred to a general population unit at the HOC on February 13, 2009.

court raised any question regarding Scott's competency. The jury returned verdicts finding Scott guilty of two of the counts of battery, the disorderly conduct count, and the kidnapping count. The jury returned a not guilty verdict with respect to one count of battery.

¶9 At the October 9, 2009 sentencing hearing, when discussing Scott's background, the trial court found that, despite a history of paranoid schizophrenia, Scott was competent. The trial court stated,

> The defendant as noted in the PSI [presentence investigation report] and as noted in the doctor's report, the psychological evaluation was conducted months ago relative to his competency, does indicate that this defendant suffers from a history of paranoid schizophrenia. He does appear to me at times, though he certainly appeared competent during this case, *I want to make that very clear*, that is the opinion of the doctor, that was my conclusion that he was competent to proceed in this case. I think there is evidence of some delusional thought patterns. The truth probably lies somewhere in between that there is minimization, and I think there's a degree of delusional thought from the defendant.

(Emphasis added.) The trial court then imposed a global sentence of twelve years of initial confinement and ten years of extended supervision.

¶10 Postconviction counsel questioned Scott's competency to proceed during postconviction proceedings. After a June 21, 2016 hearing, the circuit court ordered a competency evaluation. In a report dated July 22, 2016, Dr. Robert Rawski, M.D., also of the Wisconsin Forensic Unit, opined that Scott was not competent, but that with proper medication he could become competent.

¶11 At an August 17, 2016 hearing, the circuit court found that Scott was not competent, was not competent to refuse medication and treatment, ordered that Scott be treated to competency, and suspended the postconviction proceedings.

¶12    In a subsequent report dated May 5, 2017, Dr. Rawski concluded that Scott had regained his competency.  During a May 7, 2017 hearing, the circuit court found, with the agreement of postconviction counsel, Scott, and the State, that Scott was competent to proceed with the postconviction proceedings.

¶13    Following a decision from our supreme court on December 7, 2017, postconviction counsel filed a motion for a competency evaluation.[6]  The circuit court granted the request.  In a report dated February 27, 2018, Dr. Deborah L. Collins, Psy.D., of Behavioral Consultants, Inc., reported that Scott was not competent to proceed at that time.  Then on April 13, 2018, the circuit court issued an order finding that Scott was not competent.  On October 15, 2018, based upon the petition of postconviction counsel, the Milwaukee County Probate Court appointed a temporary guardian to make postconviction/appellate decisions on Scott's behalf.

¶14    On December 12, 2018, Scott filed a postconviction motion, which he subsequently amended on January 18, 2019.  Scott alleged that (1) during trial, as his direct and cross-examination progressed, the trial court should have *sua sponte* stopped the trial and ordered an evaluation of Scott's competency; and (2) when Scott exercised his right of allocution at sentencing, the trial court should have *sua sponte* stopped the sentencing and ordered an evaluation of Scott's competency.

---

[6] Scott appealed the involuntary medication and treatment portion of the circuit court's August 17, 2016 order.  After granting Scott's petition to bypass the court of appeals, our supreme court reversed the circuit court's order as being premature because the circuit court had failed to follow the mandatory procedure set forth in **State v. Debra A.E.**, 188 Wis. 2d 111, 523 N.W.2d 727 (1994), and remanded for further proceedings.  *See* **State v. Scott**, 2018 WI 74, ¶¶1-4, 8, 26, 382 Wis. 2d 476, 914 N.W.2d 141.

¶15    In a March 13, 2019 written decision, the circuit court denied the motion regarding Scott's competency at trial and at sentencing. The circuit court found that, based on its observations of Scott and his demeanor during the trial and at sentencing, there was no reason to doubt Scott's competency. Summarizing, the circuit court stated that it had to take Scott's testimony and sentencing statements in context and that, in light of the entire record and transcript, he was competent.

¶16    This appeal followed.

## DISCUSSION

¶17    The only claim that Scott raises on appeal is that the trial court violated his Fourteenth Amendment right to procedural due process under *Pate v. Robinson*, 383 U.S. 375 (1966). He argues that the trial court had reason to doubt his competency during trial and at sentencing, but, in each instance, failed to *sua sponte* hold a competency hearing under WIS. STAT. § 971.14. Scott relies on his trial testimony and his allocution statement at sentencing.

¶18    The State argues that there was no reason for the trial court to doubt Scott's ability to assist trial counsel and to understand the proceedings during trial or at sentencing and that the trial court properly exercised its discretion in denying postconviction relief. The State also argues that Scott's attorney forfeited Scott's claim that there should have been a competency hearing by not raising the claim during the trial or at sentencing.

¶19    We conclude that the record, viewed in context, establishes that the trial court properly exercised its discretion in finding that there was no reason to doubt Scott's competency during the trial. However, we further conclude that the trial court erroneously exercised its discretion in finding that Scott's statement at

sentencing did not raise reason to doubt Scott's competency at that time because that finding lacks support in the record.[7]

¶20    A preliminary issue on appeal is the applicable standard of review. Scott argues that the standard of review for whether there was reason to doubt his competency during trial and at sentencing in this case is *de novo*, citing **United States v. Dreyer**, 705 F.3d 951, 960 (9th Cir. 2013).  The State argues that the standard of review is an erroneous exercise of discretion.

## I.    Standard of review

¶21    A court is required to proceed under WIS. STAT. § 971.14(1r)(a) "whenever there is reason to doubt a defendant's competency to proceed." Therefore, the threshold inquiry in this appeal is whether there was reason to doubt Scott's competency to proceed during the trial and at sentencing.

¶22    Our supreme court has explained that there are "two different standards of review for two different considerations that bear on competency." **State v. Smith**, 2016 WI 23, ¶24 n.10, 367 Wis. 2d 483, 878 N.W.2d 135.  The court explained, "We write to clarify the correct standard of review so that as concerns relative to competency are raised, the reviewing court applies an accurate lens that is particularized to the type of circuit court decision under review." **Id.**  It further stated that "[u]nder the standard that applies to whether there was 'reason

---

[7] Because we resolve the case on other grounds, we do not reach the constitutional issue. *See* **State v. Blalock**, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (stating that as an appellate court, we resolve cases on the narrowest possible grounds).

We also do not address the State's argument that Scott forfeited his postconviction competency claims because the State raises that argument for the first time on appeal. *See* **State v. Caban**, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997).

to doubt' competency, an appellate court should not reverse a circuit court's decision unless it erroneously exercised its discretion in refusing to conduct a competency hearing." *Id.* By contrast, the court explained that "[u]nder the standard that applies to competency determinations, we will not reverse the circuit court's decision unless it was clearly erroneous." *Id.* (alteration in original; citations omitted).

¶23 In *Smith*, our supreme court further stated that "[i]n regard to holding competency hearings at the trial stage, we have repeatedly noted that before competency proceedings are required, evidence giving rise to a reason to doubt competency must be presented to the circuit court." *Id.*, ¶43. "[W]hether there is evidence that does give rise to a reason to doubt a defendant's competency is a question left to the sound discretion of the circuit court." *Id.*

¶24 As noted, the issue in this appeal is whether there was reason to doubt Scott's competency to proceed at trial and at sentencing. Therefore, the applicable standard of review is whether the trial court erroneously exercised its discretion in holding that there was no reason to doubt Scott's competency during the trial and at sentencing.[8] "The court erroneously exercises its discretion when it

---

[8] Scott argues that the erroneous exercise of discretion standard does not apply in this case because no one raised the issue of his competency before or during the trial or at sentencing and, therefore, the trial court was not asked to exercise its discretion on the issue. He relies on *Dreyer* in asserting that unobjected to errors are subject to plain error review which is *de novo*. *United States v. Dreyer*, 705 F.3d 951, 960 (9th Cir. 2013).

(continued)

applies the wrong legal standard or makes a decision not reasonably supported by the facts of record." *State v. Avery*, 2013 WI 13, ¶23, 345 Wis. 2d 407, 826 N.W.2d 60. A proper exercise of discretion requires the court to examine the relevant facts, apply the correct standard of law, and use a rational process to arrive at a conclusion that a reasonable judge could reach. *State v. Scott*, 2018 WI 74, ¶39, 382 Wis. 2d 476, 914 N.W.2d 141.

## II. Applicable law regarding competency

¶25 "To provide context for our discussion, we begin with a brief overview of competency. For purposes of criminal trials, competency refers to the defendant's 'present mental capacity to understand the proceedings and assist in his or her defense.'" *State v Daniel*, 2015 WI 44, ¶21, 362 Wis. 2d 74, 862 N.W.2d 867 (citation omitted). "[T]he due process test for determining competency considers whether the defendant: (1) 'has sufficient present ability to consult' with his or her lawyer 'with a reasonable degree of rational understanding;' and (2) 'has a rational as well as factual understanding of the proceedings.'" *State v. Byrge*, 2000 WI 101, ¶27, 237 Wis. 2d 197, 614 N.W.2d 477 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "[T]he Supreme

---

We note that this case is unlike the circumstances in *Dreyer*. Scott's competency challenges are based on his testimony at trial and his statement at sentencing. Here, the judge who decided Scott's postconviction motion raising those competency challenges was the same judge who presided over the trial and at sentencing. The trial court's analysis of testimony cited by Scott in his postconviction motion is important and relevant because the analysis is informed by the judge's personal knowledge and observations of the trial and of Scott, who testified at trial and later gave a statement at his sentencing. We also consider it relevant that trial counsel raised the issue of Scott's competency at the pretrial conference; the trial court ordered a competency evaluation; and after Scott had received treatment, Dr. Lundbohm concluded that Scott was competent. At the competency hearing, the trial court was clearly aware of the report, and Scott reviewed it, discussed it with trial counsel, and stated that he believed that he was competent. We conclude that *Dreyer* is not applicable to the facts of this appeal.

Court has stated that the prohibition on the prosecution of incompetent individuals is 'fundamental to an adversary system of justice,' and the conviction of an accused person while he is legally incompetent violates due process." *Daniel*, 362 Wis. 2d 74, ¶23 (citations omitted).

¶26 Wisconsin has codified the competency test in WIS. STAT. § 971.13, which provides, "No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Additionally, pursuant to WIS. STAT. § 971.14(2)(a), if there is reason to doubt a defendant's competency, "[t]he court shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate to examine and report upon the condition of the defendant."

¶27 In *Daniel*, our supreme court explained that the competency procedures under the statute are

> "a critically important fail-safe device for the benefit of accused persons who may not be able to fully cooperate and assist in their defense." It further observed that the protection is illusory if, when there is a reason to doubt defendant's competency, neither the court nor counsel seek the procedures provided by the State for determining competency.

*Daniel*, 362 Wis. 2d 74, ¶28 (citations omitted).

¶28 Further, in *State v. Smith*, 367 Wis. 2d 483, ¶37, our supreme court explained that "the inquiry whether a defendant is competent to stand trial is a judicial, not a medical, determination." It went on to state that "[c]onsequently, the circuit court should not make a competency determination simply 'on the basis of rubber stamping the report of a psychiatrist.' Rather, the circuit court must

11

'weigh evidence that the defendant is competent against evidence that he or she is not.'" ***Id.*** (citations omitted). The court further stated that "[u]ltimately, the circuit court's determination is concerned with the defendant's '*present* mental capacity to understand and assist *at the time of the proceedings*.'" ***Id.*** (citation omitted).

### III. The trial court did not erroneously exercise its discretion in determining that it did not have reason to doubt Scott's competency during trial

¶29 Scott cites various portions of the trial transcript in arguing that there was a reason to doubt that he was not competent to proceed at trial and that the trial court should have stopped the trial to hold a competency hearing.

¶30 In denying Scott's motion, the trial court stated that "[Scott's] motion sets forth snatches of his colloquy with the court prior to trial, snippets of his trial testimony, and bits and bobs from his sentencing allocution in an attempt to show that he was not competent during the majority of the courtroom proceedings." It commented that it reviewed the transcripts and remembered the case well, and stated:

> If one reads through his testimony from beginning to end, one is left with no other conclusion than that [Scott] was lucid, coherent, and knowledgeable about the events in question. Yes, he was more coherent when testifying in question and answer form rather than in narrative form, but he had a complete grasp of the period in which the incidents occurred (December 29, 2008 to January 4, 2009), and this resulted in testimony from him that was extremely detailed at times. Further, his responses were understandable to his audience and responsive to the questions posited for purposes of determining the issues pertaining to what had occurred as well as the credibility of witnesses.… The court was there. It observed [Scott] and had no problems understanding what he was testifying to with regard to the sequence of events and what his version of events was. The court never felt that he had competency

issues during his trial testimony or sentencing allocution, or that he did not understand what was going on or that he could not assist in his defense.

¶31     The trial court then went on to discuss parts of Scott's testimony that he asserted supported his argument:

The snippets that the motion emphasizes are taken out of context and attempt to demonstrate an incoherent frame of mind, which was definitely not the case.… More often than not, his testimony was detailed and coherent, and he was able to follow along with the questions that were asked of him.

¶32     The trial court went on to find that there was no basis during or after the trial to question Scott's competency. It specifically noted, at sentencing, that Scott appeared competent during trial. It emphasized that "I want to make that very clear." Scott fails to show that the trial court erroneously exercised its discretion in analyzing and finding that there was no reason to doubt Scott's competency during the trial. However, we now comment on some of Scott's arguments that various portions of the trial transcript support his contention that the trial court had a reason to doubt that he was not competent to proceed at trial.

**Scott's waiver of his right to testify**

¶33     In arguing that the trial court failed to properly exercise its discretion in failing to doubt his competency at trial, Scott cites to the transcript where the trial court asked him if he wished to testify or not. Scott's response was, "Well, if the same crowd is going to be here that we had yesterday, not meaning the [S]tate, jury and you and I. And just talking as far as the defendant, I mean—excuse me, the defendants." Scott argues that this shows his confusion because he was the only defendant.

¶34    What Scott omits from the excerpt is that the trial court immediately asked, "Witnesses?" and Scott responded, "Yeah, witnesses that complained against me." The trial court went on to state, "I think Mr. Scott was referring to a couple of the witnesses that testified yesterday afternoon, particularly on two of the three battery counts. Those witnesses were present yesterday. They are not present this morning." The trial court then gave trial counsel an opportunity to talk to Scott about what he may have been thinking about when he gave the responses quoted above.

¶35    After trial counsel and Scott talked privately, trial counsel advised the trial court that they were ready to proceed, that he had talked to Scott about Scott's questions, and that he had told Scott that the witnesses who had testified earlier would not be in court and that the courtroom would probably be empty for the balance of the trial. He then said that he asked Scott if he wanted to testify or did not want to testify and Scott said that he wished to testify.

¶36    The trial court then addressed Scott directly and asked if he discussed testifying with trial counsel. Scott answered, "Yes." The trial court went on to find that Scott had freely decided to testify and waived his right to remain silent.

¶37    We conclude that the trial court did not erroneously exercise its discretion in finding that the testimony regarding Scott's waiver of his right to remain silent does not provide any indication that there was reason to believe that Scott was not competent.

**Scott's trial testimony**

¶38 In further arguing that the trial court erroneously exercised its discretion in finding that there was no reason to doubt that he was competent at trial, Scott argues that he seemed able to answer "yes" or "no" questions and questions seeking concrete facts, but that he struggled to explain himself, rambled, and gave disjointed or non-responsive answers to questions. For example, trial counsel asked, "Is there anything you'd like to tell the judge in your own words how this happened?" Scott then stated,

> Yes, Your Honor.
>
> And the court, [S]tate, and jury and my fellow attorney, it's time to putting in this agreed memory together has to be very unfortunate believe saying much to describe various of my defense. Inside my innocence describe forth of words that explains our short year-and-a-half relationship with [C.S.]

Scott relies on his reference to his "fellow attorney," as if he were an attorney, as showing that he lacked competency. We disagree. In the context of trial counsel's broad question asking Scott to explain, in the narrative, how the incidents happened, Scott's reference to my fellow attorney appears to be referring to himself as an attorney and trial counsel as his fellow attorney. Scott's particular choice of words was somewhat odd, but under the circumstances does not indicate that he did not have an understanding of the proceedings.

¶39 Scott's narrative testimony continued on until the prosecutor objected on the grounds of a narrative response. The prosecutor said that it appeared that Scott started talking about events back in May of 2007 and was trying to give almost a day-by-day account to the present. He further argued that,

essentially, the only relevant events occurred during the period of December 29, 2008, through January 4, 2009.

¶40    Regardless of the prosecutor's concept of relevance, our review of Scott's testimony and, in particular, the cross-examination, shows that Scott was attempting to describe when his relationship with C.S. began; how they lived together and moved to different locations; and, very importantly, that C.S.'s sister, C.H., was allegedly trying to manipulate and control C.S., and that C.H. allegedly became C.S.'s payee for Social Security payments so that she could control C.S.'s money.   The trial court responded to the prosecutor's objection by stating that Scott's testimony was a narrative account and, obviously, was the way that trial counsel and Scott were choosing at that point in time to present Scott's side of the story.   The record reflects that as Scott proceeded to testify in the narrative, he was trying to explain that he did not intentionally punch C.S., and that instead he was making a motion towards the door during a confrontation with C.H.    That testimony was relevant.

¶41    Another example Scott raises is his response to whether he talked to C.S. when he saw her at the McDonald's on January 4, 2009.  Scott responded,

> Yes.  I was waiving words only towards [C.S.], why, and can we talk, and my apology for the things that I haven't looked at, especially now, did you look, did you see, or did you not see that I was only trying to point at the door; and the way it looked, it looked as I'm of guilt.  I'm so of guilt.

In this passage it appears that Scott was saying that he was trying to ask C.S. if she understood or agreed that he didn't mean to hit her.

¶42    In support of his argument Scott also references some cross-examination questions.  The prosecutor asked Scott how it made him feel when he

thought he saw a man paying for C.S.'s food on January 4, 2009. Scott cites his response, "It makes me feel like a religious person that just had a relationship with someone for a year and a half." The prosecutor followed up with, "Does it make you feel happy, sad, angry, what?" Scott responded, "What was I supposed to feel, sir." The prosecutor followed up asking, "How does a person who has just been left in a relationship feel?" to which Scott responded, "I'm already sad, sir." Scott's responses do not give reason to doubt his competency—he simply explained that he felt sad like a person in a relationship is supposed to feel when the relationship ends.

¶43 Scott then cites to his answer to the prosecutor's question about January 4, 2009, referring to the time when Scott was walking with C.S. back to the apartment after finding C.S. at McDonalds. The prosecutor asked, "[A]t what point do you stop?" and Scott answered, "We stopped walking at the building." The prosecutor then went on to say, "[B]ut everybody else who has testified said—." Scott then interjected, "Okay. Sir, this is a copyright machine in front of me, too, also. I'm going to have my words based up with that as well[.]" At that point, the prosecutor interjected, "What?" and Scott continued, "Sir, I said, I want my words also matched up with the same things as copyright, like you asked me triple times to come over, and then you give me another answer. I mean, you're mixing me up. I mean."

¶44 When interpreted by a reasonable judge in the context of the trial, the exchange does not show reason to believe Scott is not competent. Rather, one reasonable interpretation is that Scott was referring to the court reporter's stenograph machine, realizing that the testimony could be read back and Scott wanted his words repeated as they were memorialized by the court reporter. Thus,

Scott's referring to the court reporter's stenograph machine as a "copyright" machine does not give reason to doubt his competency.

¶45    Scott further asserts that his asking the prosecutor, "Why are you hollering at me sir?" showed that there was reason to doubt his competency.  He asserts that there is no indication in the record that hollering occurred—the trial court said nothing.  However, the record shows that this exchange occurred after a sequence of contentious back and forth exchanges between the prosecutor and Scott.  Considered in context, the trial court could have reasonably understood what Scott was talking about because the prosecutor was speaking in an assertive, aggressive tone in asking that series of questions, which became "hollering" to Scott.

¶46    Based on the record as a whole and deferring to the trial court's findings on Scott's demeanor and interactions with the court, for the reasons we have stated, the isolated passages that Scott cites are insufficient for this court to conclude that the trial court erroneously exercised its discretion in finding that there was no reason to doubt Scott's competency during the trial.  Therefore, we conclude that the trial court did not erroneously exercise its discretion by not ordering a competency evaluation during the trial.

### IV.    The trial court erroneously exercised its discretion in not ordering a competency examination at sentencing

¶47    Scott also asserts that based on his statement at sentencing there was reason to believe he was not competent and the trial court should have ordered a competency examination.  As noted, a court is required to proceed under WIS. STAT. § 971.14(1r)(a) "whenever there is reason to doubt a defendant's competency to proceed."

¶48 The threshold inquiry under the statute is whether there was reason to doubt Scott's competency to proceed. In *Smith*, our supreme court stated that "[i]n regard to holding competency hearings at the trial stage, we have repeatedly noted that before competency proceedings are required, evidence giving rise to a reason to doubt competency must be presented to the circuit court." *Smith*, 367 Wis. 2d 483, ¶43.

> Reason to doubt a defendant's competency may be raised, for example, by a motion setting forth grounds for belief that the defendant lacks competency, by evidence presented in the proceedings … or by the defendant's courtroom demeanor. The court may, *sua sponte*, raise the issue of reason to doubt a defendant's competency.

*State v. Debra A.E.*, 188 Wis. 2d 111, 131, 523 N.W.2d 727 (1994) (emphasis added; footnote omitted). "Given the nature of mental illness, a defendant may have been competent during a prior proceeding but incompetent now, and vice versa." *State v. Meeks*, 2003 WI 104, ¶50, 263 Wis. 2d 794, 666 N.W.2d 859. "Thus, the fact that a defendant was deemed competent to stand trial should not create a presumption that the defendant is competent at a later date when the same defendant pursues postconviction relief." *Daniel*, 362 Wis. 2d 74, ¶50.

¶49 Here, we conclude that the trial court erroneously exercised its discretion because there was reason to doubt Scott's competency to proceed with sentencing. Scott, therefore, was entitled to a competency examination under WIS. STAT. § 971.14(2). Scott's rambling and incoherent allocution at sentencing showed that there was reason to doubt his competency. Although some parts of Scott's statement appear to be assertions that he was innocent, much of it makes no sense. Most of the paragraphs are incoherent and do not involve anything related to sentencing.

¶50    The following are major portions from Scott's allocution to the court at sentencing:

> I just understand I was previous record too you also, and it has to do with a lot of mistaken identities and being not just in the wrong person point out, but it's the matter of time being sitting in the incarceration that I want to be so much tax burden and knowing that the incarceration would consider it as a crime self being on a misdemeanor that I could plead guilty and go home during the time that I have spent. That's why some of the majority pleaded guilty.
>
> If I would have probably thought maybe I would have came over to the conclusion of being at the trial, but sitting upon so much in time of incarceration at that time I got tired and I wanted to go home. And I knew what was considered to be a lot of time. So basically that's that.
>
>        ….
>
> I went through explaining to the [c]ourt when I was being not to say that I'm so cruel to criticize to his face that he was expressing to explain my past, and how things that I was pronounced guilt that I wasn't so guilty of, sir.
>
>        ….
>
> And I was scared. I was 15 to at least 17 when I got out of jail. And I had another girlfriend and he had a gun in his closet. What am I, 17, 18[]years[]old. I don't even serve those purposes. I don't even look like that type of person. I look like a great grandfather who listens. Somebody who looks like a 50 dollar bill. I didn't even, respect and honor everything that he had put down for the United States.
>
> And I have never been a thing called treating women cruel at all. I have been so kind. And I've been called lames, goofies, not like every women. But this person -- only a sister. I could just say to me myself, Andre, I just been so kind that I gave my time too much in the street when actually been the old shoe in my own family and staying -- (inaudible)[.] That gets me in the neck of the woods look into the city of as the sun come down on me.
>
> And I wish that I could change what's going on right with 10 years probation to prove that I do have the abilities exist and it's something in my head that messing with me before

> I eat something. And I don't know what to do. I don't know my next day. I got this movie in my face called a (inaudible). I watch it and again just about a while -- (inaudible)[.] And I'm real scared of it. And then about this other movie, something about a day after, you know, it's like those two things come out of my mind, and I go through psychologically crazy. I don't think that should be a real cause (inaudible)[.] I don't think to save another worlds, and if I could go on probation I will.

These statements are incoherent and provide nothing relevant to an allocution at sentencing.

¶51 In contrast to its analysis and discussion of why it did not find there was reason to doubt Scott's competency during the trial, the trial court's comments regarding his competency at sentencing were terse: "After having heard his trial testimony, his sentencing comments made sense. One simply cannot take them out of context of the overall picture." The trial court made no attempt to explain why Scott's specific statements at sentencing did not raise a reason to doubt his competency.

¶52 We conclude that Scott's rambling, incoherent statement at sentencing that was mostly unrelated to any sentencing issues created a reason to doubt that he was competent. A court "erroneously exercises its discretion when it … makes a decision not reasonably supported by the facts of record." *Avery*, 345 Wis. 2d 407, ¶23. We further conclude that, because there was reason to doubt Scott's competency to proceed with sentencing, the trial court was obligated to follow the procedures set forth in WIS. STAT. § 971.14, and to order a competency examination prior to sentencing Scott. Therefore, we reverse this portion of the postconviction order and remand the matter to the trial court.

¶53 As our supreme court has explained:

> On appeal, where the record reveals doubt about a defendant's competency at the time of trial and sentencing, the remedy is not to vacate the judgment of conviction and order a new trial. Rather, the remedy is a remand to determine whether a meaningful retrospective competency hearing can be held.

*Smith*, 367 Wis. 2d 483, ¶44. If a retrospective competency hearing can be held, then the trial court must hold the hearing. If after the retrospective competency hearing, the trial court finds that Scott was competent at sentencing the sentence stands. *See id.* "However, if after a competency hearing is held, the circuit court finds that [Scott] was not competent when he was [sentenced], only then is it appropriate to" order a new sentencing hearing. *See id.* Furthermore, if at that time, there is a competency issue the trial court shall address that issue prior to any new sentencing hearing.

¶54 To be clear, this opinion is neither a determination, nor should it be interpreted as implying any determination, as to the ultimate issue of whether Scott was competent or incompetent when he was sentenced. That is an issue for the trial court to resolve, if possible, on remand.

## CONCLUSION

¶55 Based on the foregoing, we affirm the trial court's postconviction order in part regarding Scott's competency at trial and reverse and remand in part regarding Scott's competency at sentencing.

*By the Court.*—Order affirmed in part and reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

22